USCA1 Opinion

 

 January 15, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1278 JANE KING, Plaintiff, Appellant, v. COLLAGEN CORPORATION, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Aldrich and Campbell, Senior Circuit Judges. _____________________ _____________________ Clinard J. Hanby, with whom Susan A. Allinger, John O'Quinn, ________________ _________________ ____________ O'Quinn, Kerensky & McAninch, Michael M. Essmyer, Michael M. ______________________________ ___________________ ___________ Essmyer & Associates, Frank Lynch and LeComte, Emanuelson, Tick & ____________________ ___________ ___________________________ Doyle, were on brief for appellant. _____ Bob Gibbins and Jeffrey R. White, were on brief for the ____________ _________________ Association of Trial Lawyers of America, amicus curiae. Joseph J. Leghorn, with whom Peter T. Wechsler, Warner & __________________ __________________ _________ Stackpole, Joe W. Redden, Jr., W. Curtis Webb, and Beck, Redden & _________ __________________ ______________ ______________ Secrest, were on brief for appellee. _______ Bruce N. Kuhlik, Lars Noah, Covington & Burling, Edwin H. _______________ _________ ____________________ _________ Allen, and Retta M. Riordan, were on brief for Health Industry _____ ________________ Manufacturers Association, amicus curiae. ____________________ ____________________ TORRUELLA, Circuit Judge. Jane King appeals from a _____________ grant of summary judgment entered in favor of Collagen Corporation ("Collagen") by the United States District Court for the District of Massachusetts. The district court determined that plaintiff's claims were preempted by the Medical Device Amendments of 1976 ("MDA"), 21 U.S.C. 360c et seq. Because the _______ district court correctly construed the preemption provision of the MDA, we affirm. FACTS FACTS _____ Defendant Collagen manufactures and distributes Zyderm, a cosmetic medical device used to correct wrinkles and other skin deformities. Zyderm treatment consists of injecting processed cow tissue directly under the skin. Zyderm then supports the skin from underneath, smoothing out deformities on the surface of the skin. The course of treatment may run for several weeks and requires up to six applications. Researchers at Stanford University developed Zyderm in the early 1970's and Collagen placed it on the market in the early 1980's. As a medical device, Zyderm falls within the scope of the MDA and thus must be approved and regulated by the Food and Drug Administration ("FDA"). As a Class III medical device under the MDA scheme, it is subject to the most extensive pre-marketing approval requirements imposed by the MDA and to similarly extensive regulation post-approval. The premarket approval process is designed to provide a "reasonable assurance of . . . safety and effectiveness" for medical devices which are too dangerous or unknown to permit less regulation. 21 U.S.C. 360c(1)(C). Post-approval regulation is designed to keep the FDA apprised of ongoing safety findings or any other information about the device as it becomes available. Id. 360e(e) & ___ 360i(a). Pursuant to the pre-marketing approval process, the FDA requires applicants to submit proposed labeling, extensive safety testing data and descriptions of manufacturing methods and materials. Id. 360e(c)(1). Upon reviewing the materials in a ___ comprehensive manner, the FDA may approve the device for sale or return the application to the applicant for further information or testing. Id. 360e(d)(1). When the FDA returns an ___ application to the applicant, the FDA must apprise the applicant of how to correct all deficiencies. Id. 360e(d)(2). Once the ___ device is approved, the FDA retains the power to withdraw approval of the product permanently or suspend its approval temporarily if it determines that the device has become unsafe or its labeling inadequate. Id. 360e(e)(1)(3). To assist the FDA ___ in making these determinations, manufacturers must maintain records and make reports to the FDA on information pertinent to the device. Id. 360i(a). Zyderm passed through the Class III ___ approval process prior to marketing, and underwent revisions to the original approval afterwards. Appellant Jane King sought Zyderm treatment in 1987. Following the normal procedure, Ms. King's physician administered a test dose of Zyderm before proceeding with the full treatment. Shortly after receiving this test dose, Ms. King suffered muscle -3- and joint pains, as well as other symptoms. Her doctor subsequently diagnosed her as having dermatomyositis/polymyositis ("DM/PM"), an autoimmune disease in which the immune system attacks skin and muscle tissue as if it were a foreign substance. When Ms. King received Zyderm, Zyderm's FDA-approved labeling contraindicated use by those with a personal history of autoimmune disease. Since that time, however, the FDA has gradually allowed Collagen to change the labeling as it related to autoimmune disease. By 1991, Zyderm was no longer contraindicated for persons with a history of autoimmune disease. The FDA required a warning in 1991, however, that some recipients have suffered from unwanted autoimmune reactions, but that no causal connection between Zyderm and these reactions has been shown. Ms. King subsequently filed a first amended complaint detailing seven claims against Collagen.1 First, she claimed that Collagen was strictly liable for her injuries because Zyderm ____________________ 1 Ms. King filed suit against Collagen in 1990 alleging that the test dose of Zyderm caused her to develop DM/PM. Count one of her suit alleged that Collagen negligently tested, manufactured and sold Zyderm. Count two alleged that Collagen breached implied warranties of merchantability. Count three alleged fraud and deceit in the sale of Zyderm. Ms. King subsequently filed the amended complaint. Appellee contends that Ms. King informed appellee that she would withdraw this amended complaint. As such, appellee never opposed its entry. The district court entered the amended complaint, noting that no opposition was filed. The district court, however, proceeded to grant summary judgment on the basis of Ms. King's original complaint. Because the amended complaint contains essentially similar claims as the original complaint, with few additions, we will address the claims in the amended complaint. -4- was unsafe for its intended purpose and unreasonably dangerous to users. Second, she alleged that Zyderm was not safe and fit for the purpose intended and therefore was sold in breach of the warranty of merchantability. Third, Ms. King alleged that negligence in the design, manufacture, marketing and sale of Zyderm, including negligence in not revealing dangerous propensities of the product, led to her injury. Fourth, she maintained that Collagen misbranded and/or mislabeled Zyderm. Fifth, she asserted that Collagen made misrepresentations of material fact to Ms. King in selling Zyderm to her. Sixth, she alleged that Collagen failed to warn her of any defective condition. Finally, Ms. King alleged that Collagen fraudulently obtained FDA approval. Collagen moved for summary judgment shortly after Ms. King filed her amended complaint, arguing that FDA regulation of Zyderm under the MDA preempted all of the causes of action alleged in the complaint. The district court granted this motion, relying on a similar case from the Southern District of Texas. This case, Stamps v. Collagen Corp., No. H-90-2242, 1991 ______ ______________ U.S. Dist. LEXIS 20666 (S.D. Tex. 1991), held that plaintiff's various products liability claims arising out of Zyderm treatment were preempted by FDA regulation under the MDA. LEGAL ANALYSIS LEGAL ANALYSIS ______________ I. I. Article VI of the Constitution dictates that federal law "shall be the supreme Law of the Land; and the judges in -5- every State shall be bound thereby, any Thing in the Constitution or Laws of any State notwithstanding." U.S. Const. art. VI, cl. 2. State laws that conflict with federal laws and regulations, therefore, are preempted. E.g., Malone v. White Motor Corp., 435 ____ ______ _________________ U.S. 497 (1978). In determining whether such a conflict exists, it is well settled that the intent of Congress governs. That is, preemption does not occur unless Congress so intended. Rice v. ____ Santa Fe Elevator Corp., 435 U.S. 497, 504 (1978). _______________________ Congress may express its intent to preempt state law explicitly in the language of the statute. Jones v. Rath Packing _____ ____________ Co., 430 U.S. 519, 525 (1977). Congress may express its intent ___ implicitly by passing an extensive statutory scheme that extensively covers the field of regulation. Fidelity Federal ________________ Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982). __________________ _____________ Implied preemption also occurs when a conflict between state and federal law makes compliance with both impossible, or when state law would frustrate the purpose and objectives of the federal law. Id. (citing Florida Lime & Avocado Growers, Inc. v. Paul, ___ _____________________________________ ____ 373 U.S. 132, 142-43 (1963); Hines v. Davidowitz, 312 U.S. 52, 67 _____ __________ (1941)). We are aided in our determination of preemption in this case by the Supreme Court's recent treatment of the subject in Cipollone v. Liggett Group, Inc., 112 S. Ct. 2608 (1992). In _________ ____________________ Cipollone, a victim of lung cancer sued several cigarette _________ manufacturers for breach of warranties contained in cigarette advertisements, for failure to warn of health hazards related to -6- smoking, for fraudulently misrepresenting those hazards to the public, and for conspiracy to deprive the public of important health information. Id. at 2613. The cigarette manufacturers ___ contended that petitioner's claims were preempted by the federal law requiring a health warning to appear on all cigarette advertisements and containers.2 Id. at 2614. ___ In analyzing preemption, the Court relied only on the specific language of the provision regarding preemption. The Court reasoned that "Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not preempted." Id. at 2618. The opinion thus ___ analyzed each of petitioner's claims in light of the express language of the preemption provision in the cigarette warning statute. The plurality held that the provision preempted failure to warn claims as to advertising practices, but not as to testing or research practices. Id. at 2621-22. The plurality reasoned ___ that the Act only preempted state law claims arising out of cigarette advertising and promotion, and that appellant's claims arising out of testing and research did not relate to advertising and promotion. The provision preempted petitioner's fraudulent misrepresentation claim that cigarette advertising neutralized ____________________ 2 That law stated that "[n]o requirement or prohibition based on smoking or health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." Federal Cigarette Labeling and Advertising Act of 1965, 5, as amended by Public Health Cigarette Smoking Act of 1969, 2, 15 U.S.C. 1334. -7- the effect of the warning in a similar fashion. Id. at 2623-24. ___ The provision, however, did not preempt fraud claims arising out of communication other than advertising, such as information required to be disclosed to an administrative agency, or out of fraudulent statements made in the advertising but unrelated to the health warning. Id. ___ The plurality further held that the provision did not preempt express warranty claims, because those claims arose due to the conduct of the manufacturers who made the warranties rather than from state law. Id. at 2622. Finally, the plurality ___ held that the provision did not preempt the conspiracy to deprive the public of material facts claims, because they did not arise out of state law pertaining to smoking and health, but rather arose out of a "duty not to conspire to commit fraud." Id. at ___ 2624. The analysis of the plurality in Cipollone guides our _________ analysis in this case. We begin by noting that the express preemption provision in the MDA, 21 U.S.C. 360k, forecloses inquiry into implied preemption, because the fact that Congress included it in the MDA implies that matters beyond its reach are not preempted. Further, we note that the Cipollone plurality _________ carefully construed the preemption provision to extend no further than its language warranted. In doing so, the plurality sought to pay proper respect to federal-state relations. This concern arises out of "the assumption that the historic police powers of the states [are] not to be superseded by . . . Federal Act unless -8- that [is] the clear and manifest purpose of Congress." Cipollone, 112 S. Ct. at 2617 (citing Rice, 331 U.S. at 230). We _________ ____ too will carefully construe the preemption provision of the MDA to give due regard to questions of federal-state relations. II. II. Bearing these principles in mind, we turn to the language of the statute in question. The MDA states that (a) Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement-- (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter. 21 U.S.C. 360k. Under subsection (b) of 360k, a state may petition the FDA in certain circumstances to allow state requirements to continue in force. Because no such petition affects this case, we are concerned only with the preemptive effect of subsection (a). Under subsection (a), we must determine whether appellant's products liability claims give rise to state law requirements in addition to or different from those mandated by the FDA. We turn first to the FDA's own understanding of subsection (a) for guidance. See Chevron U.S.A., Inc. v. Natural ___ ____________________ _______ Resources Defense Council, Inc., 467 U.S. 837 (1984) (agency's ________________________________ -9- interpretation of its own statute is controlling so long as not contrary to Congress' intent). FDA regulations provide that preemption does not apply when the FDA has issued no regulations or other requirements specific to the particular device. 21 C.F.R. 808.1(d). In this case, it is clear that the FDA has imposed requirements on Zyderm related to labeling, design, manufacturing and other aspects of the device pursuant to the MDA scheme. If the FDA has issued requirements for a device, subsection (a) prohibits states from imposing any requirements which differ from or add to the FDA requirements, or which relate to the safety or effectiveness of the device. A "State . . . requirement" in subsection (a) may emanate from any requirement established by a state including statutes, regulations, court decisions or ordinances. 21 C.F.R. 808.1(b); see also San _________ ___ Diego Building Trades Council v. Garmon, 359 U.S. 236, 247 (1959) _____________________________ ______ ("[State] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."). The language of subsection (a) and the definition of state requirement promulgated under it demonstrate a field of preemption which is broad, but limited. Any state requirement which, in effect, establishes a new substantive requirement for the device in a regulated area such as labeling, is preempted. 21 C.F.R. 808.1(d)(6)(ii). As the Seventh Circuit noted, -10- however, subsection (a) of the MDA does not preempt such claims as negligent implantation or removal of devices, or claims arising out of contaminated devices. Slater v. Optical Radiation ______ _________________ Corp., 961 F.2d 1330, 1334 (7th Cir. 1992), cert. denied, 1992 _____ ____________ U.S. LEXIS 6436 (Oct. 13, 1992). Armed with this understanding of subsection (a), we will analyze petitioner's claims individually to determine the effect of the MDA preemption provision on each. A. Strict Liability ________________ Appellant contends that Zyderm is unsafe for its intended purpose and unreasonably dangerous to users, and that Collagen therefore is liable for any injuries Zyderm may cause. Indeed, class III devices such as Zyderm are those that present a "potential unreasonable risk of illness or injury" such that extensive regulation is required to ensure reasonably safe use. 21 U.S.C. 360c(a)(1)(C). The FDA must evaluate these devices with regard to those for whose use the device is intended. Id. ___ 360c(a)(2)(A). The entire MDA scheme for such Class III devices as Zyderm, therefore, is aimed at determining and regulating the intended purpose of the device, and at ensuring a reasonable level of safety for its users. It is clear that appellant's strict liability claim would impose requirements related to the safety and effectiveness of Zyderm. If successful, the claim would require Collagen to redesign Zyderm, remove it from the market, or be subject to strict liability. The MDA does not permit this. Appellant's -11- claim would force us to determine that Zyderm is unsafe and dangerous, in opposition to the contrary determination made by the FDA under the MDA. Subsection (a) protects manufacturers of medical devices approved by the FDA under the MDA from such state law intrusion. B. Breach of Warranty __________________ Appellant claims that Collagen breached express and implied warranties of merchantability and fitness for a particular purpose. Appellant's express warranty claims arise out of the labeling and packaging of Zyderm, all of which are regulated by the FDA. In labeling and packaging, Collagen could not say any less than what the FDA required, and appellee could only add extra warnings or safety information, but not warranties, without FDA approval. Appellant's express warranty claims therefore are preempted because any such warranties only could arise out of the FDA-approved labeling and packaging. Allowing appellant's express warranty claims effectively would impose additional or different requirements on Zyderm's labeling and packaging. We note that the Court's holding in Cipollone would _________ seem to require the opposite result in this case. However, the warnings at issue in Cipollone were different than those here. _________ In Cipollone, the statute required cigarette manufacturers to _________ include a brief health warning in their advertisements; this warning did not affect cigarette advertisements in any other way. The manufacturers were free to make any claims they wished, -12- including express warranties. Here, however, the MDA has imposed much more extensive regulation upon class III device manufacturers. The FDA retains rigid control over the entirety of the labeling and packaging of class III products, largely displacing the ability of manufacturers to make additional claims. This high level of control contrasts with the low level of control in Cipollone, and ensures that manufacturers will not _________ be held liable for packaging and labeling imposed by the FDA. Appellant also alleges that Collagen breached an implied warranty of merchantability, and that this breach caused her injuries. As an implied warranty is a requirement upon a product that arises exclusively from the operation of state contract law, this claim is preempted expressly by the MDA. Otherwise, it would impose a requirement additional to those imposed under the MDA. C. Negligence __________ Appellant's third claim alleges negligence in the design, manufacture, marketing and sale of Zyderm. This claim also is preempted by the MDA. If the MDA does nothing else, it regulates the design, manufacture, sale and marketing of class III medical devices in an extensive way. The MDA does this through the packaging and labeling requirements which directly affect the marketing and sale of the product. The same requirements also affect the design and manufacture of the product in that these processes must be approved by the FDA and described in the product's packaging and labeling. -13- As the design, manufacture, marketing and sale of Zyderm is the subject of FDA regulation, the negligence claim is preempted. Otherwise, a finding of negligence would force Collagen to alter these aspects of Zyderm in response to the finding of liability, or be subject to liability. Either result impermissibly would impose an additional or different state requirement upon the design, manufacture, marketing and sale of Zyderm. D. Product Misbranding, Misrepresentation & Failure to ___________________________________________________ Warn ____ Appellant contends that Zyderm was misbranded or mislabeled. Misbranding generally occurs when labeling is "false or misleading" in any particular. 31 U.S.C. 352(a). Under the MDA, the FDA must reject proposed labeling when the labeling is "false or misleading in any particular." Id. 360e(d)(2)(D). ___ As there is no indication in the record that the Zyderm administered to Ms. King was anything but what the FDA-approved labeling said it would be, notwithstanding appellant's bald statements, we find this claim preempted. Appellant's fifth and sixth claims of misrepresentation and failure to warn are preempted for similar reasons. A finding that Collagen misrepresented Zyderm to appellant would impose a requirement on Collagen to change its packaging or labeling in order to correct the misrepresentation. The failure to warn claims similarly challenge the adequacy of Zyderm's FDA-regulated packaging and labeling. The MDA forecloses these claims because Collagen cannot be forced to change Zyderm's packaging and -14- labeling by virtue of these state law damage claims. E. Fraud _____ Appellant's final cause of action alleges that Collagen fraudulently obtained FDA approval at the premarketing stage of the MDA process, and asks for treble damages due to the fraud. This cause of action is more unclear than her other causes of action. Collagen insists that the claim originally was based upon Mass. Gen. L. ch. 231, 85J, an antifraud statute, while appellant urges that it was based on a more general duty not to deceive. Section 85J provides that "[w]hoever, by deceit or fraud, sells personal property shall be liable in tort to a purchaser in treble the amount of damages sustained by him." The language of this statute corresponds to Ms. King's fraud claim in providing for treble damages. Because Ms. King has not specified any applicable statute, or other reason why she is entitled to treble damages under a general duty not to deceive, we must conclude that the fraud claim originally arose under 85J. The district court made the same finding in its memorandum and order in this case. To state a claim for fraud under 85J, the plaintiff must be in privity with the seller. Kourouvacilis v. General _____________ _______ Motors Corp., 410 Mass. 706, 575 N.E.2d 734, 735 (1991). In this ____________ case, no privity existed between appellant and Collagen, as Collagen only sold its product directly to appellant's physician. Thus, as a matter of Massachusetts law, appellant's fraud claim -15- must fail. We further note that the fraud claim is, at bottom, a failure to warn claim. It seeks to show that Collagen had a duty to provide different information in Zyderm's packaging and labeling than that which was approved by the FDA. As such, the claim is preempted expressly by the MDA. CONCLUSION CONCLUSION __________ Because we have determined that the MDA expressly preempts Ms. King's state law tort claims, the judgment of the district court is affirmed. ________ "Concurrence follows" -15- ALDRICH, Senior Circuit Judge, with whom CAMPBELL, ____________________ Senior Circuit Judge, joins, concurring. While we agree with ____________________ our brother Torruella's result, and a good deal that he says, we approach this case somewhat differently. First, a matter of housekeeping. On December 13, 1991, a year past the scheduled date for completion of the pleadings, plaintiff filed a motion to allow an amended complaint, accompanied by the complaint. On December 17 she wrote defendant that she would withdraw her motion. Defendant, accordingly, did not oppose. On December 27 defendant moved for summary judgment. In opposing defendant's motion for judgment plaintiff made no mention of the proposed new complaint, but, in fact, she did not withdraw her motion, and the court later allowed it. However, the court's ultimate order granting summary judgment did not mention the amendment. At first blush we might agree with defendant's objection that there were substantive additions in the amended complaint, particularly with relation to fraud. Apart from fraud, the rest of the amended complaint contains six claims as against, originally, two -- negligence and breach of implied warranty. There was definitely a purported enlargement -- a state tort of strict liability, and a claim of express warranty. While the negligence alleged is limited to designing and producing a dangerous product, and not that the sample sold plaintiff was in some way a departure and -16- individually defective, plaintiff adds mislabeling and misrepresentation, and, finally, failure to warn. Taking defendant's now alleged seven sins, we group them as follows. Strict liability (negligent design), implied warranty, negligence, mislabeling, and failure to warn are really all of a piece -- failure to warn. On the record it is clear that had there been a warning that the product might cause the disease that plaintiff allegedly suffered she would have no claim under any of these headings. On this basis there is thus no real enlargement by the amended complaint. Express warranty might be enlargement, but there is no basis for claiming it.3 Finally, fraud and misrepresentation are not as newly put as they look. Defendant would have it that the original allegation related only to representations made to the plaintiff. Plaintiff states that she intended her language to include misrepresentations to the agency. Two of her exhibits seeking to raise an issue on the motion for summary judgment bear this out. The amendment should stand, as mere clarification. However, we read fraud more broadly than does our brother, and shall return to it later. All agree that there is one basic issue: federal preemption. Preemption may apply against state judicial as ____________________ 3. Express warranty might have created a problem for the defense of preemption, cf. Cipollone v. Liggett Group, Inc., __ _________ ___________________ 112 S. Ct. 2608, 2622-23 (1992). -17- well as legislative action,4 Cipollone v. Liggett Group, _________ ______________ Inc., 112 S. Ct. 2608 (1992), and may take two forms, express ____ and implied, with a heavy burden upon the party asserting it. Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977). This is _____ ________________ especially so when the subject is the state interest in health and safety. Hillsborough County v. Automated Medical ___________________ _________________ Labs, Inc., 471 U.S. 707, 715, 718-19 (1985). The question __________ is Congressional intent. Wood v. General Motors Corp., 865 ____ ____________________ F.2d 395, 401 (1st Cir. 1988), cert. denied, 494 U.S. 1065 ____________ (1990). Here, concededly, the statute's purpose is health protection, but the parties disagree as to its scope. Plaintiff says it is directed to the individual user by keeping harmful products off the market and assuring proper warnings. Defendant says it is also to benefit the public at large by shielding regulated manufacturers against inconsistent state regulation, including lawsuits. If their legal risks may be too great, worthwhile medical devices may be left in the laboratory, to the public's loss. Public health is a valid federal purpose, and Congress can reasonably weigh possible loss to the idiosyncratic few against benefits to the public generally. See, e.g., Mary Beth Neraas, The National Childhood Vaccine ___ ____ Injury Act of 1986: A Solution to the Vaccine Liability ____________________ 4. A matter that may have troubled the court in Wood v. ____ General Motors, post. See, also, 21 C.F.R. 808.1(b). ______________ ____ ___ ____ -18- Crisis? 63 Wash. L. Rev. 149 (1988). The legislative history shows that this was precisely the Congressional intent. Concededly, the U.S. Code Congressional and Administrative News, 94th Congress, Second Session, Vol. 3, pp. 1070 et seq., Medical Device Amendments of 1976, shows __ ___ the principal emphasis to be on the protection of the individual user. But it also shows the intent to "encourage . . . research and development" and "permit new and improved devices to be marketed without delay." Infra. Perfection is _____ impossible and a few individuals may be denied full protection at the cost of benefitting the rest. Contained within the Senate Report (94-33)5 are the following. As medicine progresses, as research makes new breakthroughs, an increasing number of sophisticated, critically important medical devices are being developed and used in the United States. These devices hold the promise of improving the health and longevity of the American people. The Committee wants to encourage their research and development. [1071] S. 2368 recognizes the benefits that medical research and experimentation to develop devices offers to mankind. It recognizes, too, the need for regulation to assure that the public is protected and that health professionals can have more confidence in the performance of devices. [1075] ____________________ 5. The Senate bill was passed in lieu of the House bill. -19- The Committee recognizes the rapidly changing nature of the devices field and therefore feels that provisions must be made to amend standards on the basis of improved technology or new scientific evidence. Such amendments should be made in an expedited fashion so that appropriate changes can be rapidly implemented. The purpose of this authority is to permit new or improved devices to be marketed without delay so that the public may have such beneficial devices available to them as soon as possible. [1083] Translating this into a simple concept, and taking the difference of opinion between the parties to be whether the FDA requirements are merely minimum, or are the total maximum protection afforded the individual user, we believe this a clear demonstration of Congressional choice of the latter. We further find that the comprehensive statutory language conforms thereto. 21 U.S.C. 360e(c)(1) provides, (1) Any person may file with the Secretary an application for premarket approval for a class III device. Such an application for a device shall contain -- (A) full reports of all information, published or known to or which should reasonably be known to the applicant, concerning investigations which have been made to show whether or not such device is safe and effective; (B) a full statement of the components, ingredients, and properties and of the principle or principles of operation, of such device; -20- (C) a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when relevant, packing and installation of, such device; (D) an identifying reference to any performance standard under section 360d of this title which would be applicable to any aspect of such device if it were a class II device, and either adequate information to show that such aspect of such device fully meets such performance standard or adequate information to justify any deviation from such standard; (E) such samples of such device and of components thereof as the Secretary may reasonably require, except that where the submission of such samples is impracticable or unduly burdensome, the requirement of this subparagraph may be met by the submission of complete information concerning the location of one or more such devices readily available for examination and testing; (F) specimens of the labeling proposed to be used for such device; and (G) such other information relevant to the subject matter of the application as the Secretary, with the concurrence of the appropriate panel under section 360c of this title, may require. Following these detailed requirements, and we note especially subsection (F), comes Section 360k(a). [N]o State or political subdivision of a State may establish or continue in effect -21- with respect to a device intended for human use any requirement -- (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter. Particularly in the light of the legislative history we read this as maximum protection and express preemption, leaving no need to seek implications. As all but one of plaintiff's sustainable claims are premised on a failure to warn, preemption here is unavoidable, given the subsection (F) requirement that labels be reviewed by the FDA. It follows that most of plaintiff's arguments are beside the mark. A few, however, may deserve mention. Plaintiff claims that because of the regulation reported in 21 C.F.R. 814.39(d)(1), to the effect that a manufacturer "may," without prior approval, make certain changes that enhance safety, defendant had a duty to make such here. It is sufficient to say that to interpret "may" as "should" would unravel the entire garment. Second, citing Silkwood v. ________ Kerr-McGee Corp., 464 U.S. 238, 251 (1984), plaintiff says ________________ that, if defendant is correct, she has no cause of action. Given an ambiguity, this objection is a factor in statutory construction, but, of itself, it cannot create an ambiguity, -22- or there could never be preemption. Finally, plaintiff says that the FDA's preemption regulation, 21 CFR 808.1(d) conflicts with our result. When a statute is clear the agency interpretation must give way. Hillsborough County, ___________________ 471 U.S. at 714-15. A more troublesome issue is the claim labeled fraud. FRAUD _____ . . . Defendant Collagen Corporation fraudulently obtained FDA approval of the Zyderm PMA, product and labeling, which was a producing or proximate cause of damage and injury to Plaintiff. Defendant . . . further acted to suppress the facts, blame injuries or other causes that its product (sic) and prevent disclosure of the true risks.[6] Plaintiff has a case in point. In Hurley v. ______ Lederle Laboratories Division of American Cyanamid Co., 863 _______________________________________________________ F.2d 1173 (5th Cir. 1988), the court, though agreeing with the district court that the FDA regulation with respect to defendant's vaccine labeling was intended to be preemptive, remanded. At issue was the same tension between protecting idiosyncratic individuals and the public health. Balancing these, the Court concluded, ____________________ 6. As in the original complaint, plaintiff sought treble damages. Though not mentioned, presumably this demand invoked Mass. G.L. c. 231, 85J, that awards treble damages in certain cases of "deceit or fraud." We do not read it, however, as limiting the scope of plaintiff's claims. -23- [T]his issue should be presented to the jury in the form of special interrogatories, questioning whether and what information the manufacturer withheld from the FDA, if any, and whether possession of this information would have materially altered the content of the FDA's warning. This special procedure is justified by the federal interest in encouraging manufacturers to produce vaccines, in that those manufacturers need some assurance that if they follow certain prescribed procedures, such as including an FDA- approved warning, they are complying with the law. Id. at 1180. With respect, one may wonder how "encouraging" __ manufacturers would view the ruling.7 Rather, we side with the later case of Papas v. Upjohn Co., 926 F.2d 1019 (11th _____ ___________ Cir. 1991), where the court said, at 1026 n.8, To the extent that Hurley purports to ______ recognize an exception to federal preemption of common law tort labeling claims when the federal statute involved explicitly prohibits state regulation of labeling and the federal agency has received incomplete information from the manufacturer, we reject its holding at least as applied to FIFRA-regulated pesticides. Given the FIFRA regulatory scheme, it would be up to the EPA -- and not a jury -- to determine first (1) ___ whether the information provided was incomplete or inaccurate; (2) whether the omitted information is significant enough to mandate a change in the label; and (3) how, if at all, the label should be corrected. ____________________ 7. Indeed, we are reminded of the observation that the British hanged a negligent admiral "pour encourager les autres." Voltaire, Candide, Ch. 23. _______ -24- To prove fraud, plaintiff must show causality. Surely, where the FDA was authorized to render the expert decision on Collagen's use and labeling, it, and not some jury or judge, is best suited to determine the factual issues and what their effect would have been on its original conclusions. Further, if the court erred, and incorrectly posited the effect on the FDA's use and labeling decision, this would impose a state requirement "which is different from, or in addition to, any requirement applicable . . . to the device." 21 U.S.C. 360k(a). In addition to running afoul of the general principle against implying personal causes of action, Royal _____ Bus Group, Inc. v. Realist, Inc., 933 F.2d 1056 (1st Cir. _______________ ______________ 1991), plaintiff would be breaching the federal dyke in the absence of its keeper. Papas has been vacated and remanded for further _____ consideration in the light of Cipollone, 112 S. Ct. 2608, but _________ we do not believe this to be a reversal on that point. Our position is consistent with Cipollone, that did not preempt _________ fraud found to be outside the communication targeted by the regulation.8 112 S. Ct. at 2623-24. ____________________ 8. Plaintiff similarly presents a claim for misrepresentation, both to the public and to plaintiff's physician. As the record shows no statements to the public or physicians that go beyond those approved by the FDA, this claim collapses into that of fraud on the FDA. -25-