UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1911

ELLEN MENDES,

Plaintiff, Appellant,

v.

MEDTRONIC, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Cyr, Circuit Judge.

John P. LeGrand, with whom Thomas F. Walsh and John P. LeGrand &

Associates, P.C. were on brief for appellant.

Richard H. Bakalor, with whom Quirk & Bakalor, P.C., Michael W.

Gallagher, Andrea Saunders Barisano, Donahue & Donahue, Dan Jarcho and

McKenna & Cuneo were on brief for appellee.

March 9, 1994

BOWNES, Senior Circuit Judge. In this products
BOWNES, Senior Circuit Judge.

liability action against the manufacturer of an allegedly

defective pacemaker, plaintiff-appellant, Ellen Mendes,

appeals from an order granting summary judgment in favor of

defendant-appellee, Medtronic, Inc. The district court

entered summary judgment for Medtronic, ruling that the

express preemption clause of the Medical Device Amendments

(MDA) of the Federal Food, Drug, and Cosmetic Act (the Act),

21 U.S.C. 360k(a), preempted plaintiff's Massachusetts

common law claims.1 We affirm.

I.

BACKGROUND

Congress enacted the MDA to give the Food and Drug

Administration (FDA) comprehensive control over medical

devices for the first time. Slater v. Optical Radiation

Corp., 961 F.2d 1330, 1331 (7th Cir.), cert. denied, 113 S.

Ct. 327 (1992). The MDA reflects Congress's balancing the

need for regulation to protect public health against its

interest in allowing new and improved devices to be marketed

expeditiously without the costs attributable to an excess of

regulation. King v. Collagen Corp., 983 F.2d 1130, 1138-39

1. Jurisdiction is based on diversity of citizenship.
Defendant asserts and plaintiff does not dispute that
Massachusetts law applies. We agree that plaintiff's tort
claims arise under Massachusetts law.

-2-
2

(1st Cir.) (Aldrich, J., concurring), cert. denied, 114 S.

Ct. 84 (1993).

Pursuant to the MDA, FDA groups medical devices

into three classes based on the degree of regulation

necessary to assure safety and effectiveness. See 21 U.S.C.

360c; H.R. Conf. Rep. No. 1090, 94th Cong., 2d Sess. 55

(1976), reprinted in 1976 U.S.C.C.A.N. 1103, 1107. All

classes of devices are subject to "general controls,"

including labeling requirements and good manufacturing

practices. See, e.g., 21 U.S.C. 360i, 360j. Class III

devices, such as pacemakers, pose the greatest risks. Such

devices may be sold only if FDA finds that they are

"substantially equivalent" in design and function to devices

on the market before the MDA became effective in 1976, or--in

the case of new or improved devices--if FDA grants premarket

approval. Id. 360c(a)(1)(C), 360e(b); 21 C.F.R.

807.100. Devices found to be "substantially equivalent" are

entitled to bypass the premarket approval process unless or

until FDA issues a regulation specifying that the device

undergo the review process.

On May 14, 1986, a Medtronic pacemaker, a Class III

device, was implanted into plaintiff. Medtronic had

distributed the pacemaker since 1981 without premarket

approval because no regulation specifically required

premarket approval, and because FDA found the pacemaker to be

-3-
3

substantially equivalent to pre-MDA pacemakers. On March 10,

1992, the pacemaker failed, and plaintiff nearly died. The

pacemaker was surgically removed, anda new model implanted.

Plaintiff filed a complaint alleging that Medtronic

was negligent in designing, manufacturing, and distributing

her pacemaker. She also included claims alleging Medtronic's

failure to provide adequate warnings, and breach of the

implied warranty of merchantability. Medtronic moved for

summary judgment on the ground that 21 U.S.C. 360k(a)

preempted all of plaintiff's claims. The district court

granted the motion, and plaintiff appealed.2

Standard of Review

Our review of a district court's summary judgment

decision is plenary. FDIC v. Anchor Properties, No. 93-1542,

slip op. at 9 (1st Cir. Jan. 5, 1993). Summary judgment is

appropriate when the pleadings and affidavits raise no

2. On the date the order granting summary judgment was
entered, plaintiff moved to amend her complaint. The
proposed amended complaint reiterated the claims in her
original complaint and added causes of action for breach of
express warranty, negligent infliction of emotional distress,
and strict liability. The proposed complaint also clarified
that she was alleging that her particular pacemaker, as

opposed to the model, was defective. The district court
denied the motion to amend after plaintiff filed an appeal of
the summary judgment order. Plaintiff's brief neither
challenges the district court's rejection of her proposed
amended complaint, nor refers specifically to any of the
claims raised solely in her amended complaint. Because our
review is limited to the issues raised on appeal, we confine
our analysis to the claims in the original complaint on which
the district court granted summary judgment.

-4-
4

genuine issue as to any material fact, and the moving party

is entitled to judgment as a matter of law. Id.; see also

Fed. R. Civ. P. 56(c).

The nonmoving party bears the burden of placing at

least one material fact into dispute after the moving party

shows the absence of material fact. Celotex Corp. v.

Catrett, 477 U.S. 317, 325 (1986). Evidence in the record

supports that plaintiff's pacemaker was defective; that the

defect caused plaintiff's injuries; and that Medtronic was

aware, before the pacemaker failed, that the model might not

work properly.

Medtronic asserted in its motion for summary

judgment that "[t]here are no genuine issues of material fact

since even if plaintiff could prove all her factual

allegations," her claims would be preempted. Medtronic also

stated, "[f]or the purposes of its Motion for Summary

Judgment only," that it did not dispute the following

allegations of plaintiff:

1. [A] Medtronic [pacemaker], model
number 5984LP (the "device"), [was]
implanted into [plaintiff] on May 14,
1986 . . . .
2. [T]he device failed on March 10,
1992 . . . .
3. This alleged failure caused a near
death circumstance and plaintiff was
required to undergo emergency surgery to
remove the . . . device . . . .
4. [Plaintiff's] injuries . . . were
due to defects in the labeling, design
and manufacture of the device . . . .

-5-
5

Def.'s Mot. for Summ. J., at 2-3 (emphasis in original).

We take these assertions at face value. We assume

plaintiff's factual allegations are true, and we examine the

legal issues in this light. Medtronic does not contend that

plaintiff's allegations fail to state a claim under

Massachusetts law. The sole issue addressed by the parties

and the district court is preemption, which is the key issue

on appeal.

II.

PREEMPTION

Medtronic argues that the Act implicitly and

expressly preempts plaintiff's claims. Congress's intent is

the touchstone of preemption analysis. Cipollone v. Liggett

Group, 112 S. Ct. 2608, 2617 (1992); King v. Collagen Corp.,

983 F.2d at 1133. State common law claims may be preempted

along with state statutes and regulations, if Congress so

intended. See, e.g., Cipollone, 112 S. Ct. at 2620; King v.

E.I. Dupont de Nemours & Co., 996 F.2d 1346, 1349-50 (1st

Cir.), cert. dismissed, 114 S. Ct. 490 (1993); King v.

Collagen Corp., 983 F.2d at 1134-35.

"Congress' intent may be `explicitly stated in the

statute's language or implicitly contained in its structure

and purpose.'" Cipollone, 112 S. Ct. at 2617 (quoting Jones

v. Rath Packing Co., 430 U.S. 519, 525 (1977)). The MDA

-6-
6

contains an express preemption provision, 21 U.S.C.

360k(a), that states, in pertinent part:

[N]o State or political subdivision of a
State may establish or continue in effect
with respect to a device intended for
human use any requirement --
(1) which is different from, or in
addition to, any requirement applicable
under [the Federal Food, Drug, and
Cosmetic Act] to the device, and
(2) which relates to the safety or
effectiveness of the device or to any
other matter included in a requirement
applicable to the device under [the
Federal Food, Drug, and Cosmetic Act].

Congress's intent in enacting this provision was to prevent

state requirements from unduly burdening interstate commerce.

See H.R. Rep. No. 853, 94th Cong., 2d Sess. 45 (1976),

reprinted in An Analytical Legislative History of the Medical

Device Amendments of 1976, app. III, at 45 (Food & Drug L.

Inst. Series, Daniel F. O'Keefe, Jr. & Robert A. Spiegel

eds., 1976).

We construe this preemption clause with due regard

for the interests of federalism because it affects state

public health regulation. A federal act will supersede "`the

historic police powers of the states,'" only if that is "`the

clear and manifest purpose of Congress.'" King v. Collagen

Corp., 983 F.2d at 1134 (quoting Cipollone, 112 S. Ct. at

2617); see also CSX Transp. v. Easterwood, 113 S. Ct. 1732,

1737 (1993); Greenwood Trust Co. v. Massachusetts, 971 F.2d

-7-
7

818, 823 (1st Cir. 1992), cert. denied, 113 S. Ct. 974

(1993).

Viewing section 306k(a) in light of this

presumption against preemption, we have held that it

expresses Congress's intent to preempt certain common law

claims because such claims may establish state

"requirements." King v. Collagen Corp., 983 F.2d at 1138;

accord Stamps v. Collagen Corp., 984 F.2d 1416, 1420 (5th

Cir.), cert. denied, 114 S. Ct. 86 (1993); cf. CSX Transp.,

113 S. Ct. at 1737 (discussing holding in Cipollone that

"federal statute barring additional `requirement[s] . . .

`imposed under state law'' pre-empts common-law claims"

(citation omitted)).

To determine the extent to which plaintiff's claims

are preempted, we need only identify the preemptive reach of

the statute's express language. Cipollone, 112 S. Ct. at

2618 (plurality); id. at 2625 (Blackmun, J., concurring in

part and dissenting in part). We thus reject at the outset

Medtronic's argument that this is an implied preemption case.

See King v. Collagen Corp., 983 F.2d at 1134; Stamps, 984

F.2d at 1420. When "Congress includes an express preemption

clause in a statute, judges ought to limit themselves to the

preemptive reach of that provision without essaying any

further analysis under the various theories of implied

preemption." Greenwood Trust, 971 F.2d at 823.

-8-
8

Our first task is to outline the Act's requirements

applicable to the device. Thereafter, we scrutinize

plaintiff's claims, to determine whether the successful

litigation of any of them would "establish or continue in

effect" a "different" or "addition[al]" requirement. 21

U.S.C. 360k(a). This analysis determines whether

plaintiff's claims are preempted. 21 C.F.R. 808.1(d)

(state requirements are preempted where "there are . . .

specific requirements applicable to a particular device under

the act").

The pacemaker at issue is a Class III device.

Although Class III devices are generally subject to stringent

design, manufacturing, and labeling controls pursuant to the

premarket approval process, 21 C.F.R. pt. 814, FDA has never

required that the pacemaker model implanted in plaintiff

comply with the premarket approval regulations. Id.

870.3610(c). The only requirements under the Act applicable

to the device are regulations on labeling and "good

manufacturing practices." Id. pts. 801, 820.

Next, we examine plaintiff's claims to determine

whether their resolution would establish or perpetuate any

requirements under the common law differing from or adding to

the Act's requirements. The complaint states:

Prior to May 14, 1986 the defendant
Medtronic Inc. . . . manufactured a
certain device [known] as a pacemaker.

-9-
9

As a result of the negligence of the
defendant, Medtronic Inc., in control,
maintenance, inspection, testing, design,
developing, servicing, distribution,
alteration, modification, sale and/or
manufacturing of said device, and as a

result of the negligence of said
defendant . . . in placing said Medtronic
pacemaker model #5984LP in the stream of
medical care and failing to give adequate
and effective warning concerning the
[foreseeable] dangers in the use of said
device, the plaintiff . . . was caused to
be injured on March 10, 1992, by this

defective pacemaker.

. . .
. . . [I]n supplying this said

device the defendant contended [that]

said pacemaker was of good and

merchantable quality and that it was fit
and safe for the normal use for which it
was intended[.] . . . [S]aid device was

not of merchantable quality and was not
fit for safe and normal use in that . . .
the defective pacemaker malfunctioned.

(Emphasis added.) The highlighted statements allege that

plaintiff's particular pacemaker was negligently

manufactured; the reference to the model number of the

pacemaker is consistent with claims that the label carried

inadequate warnings, and that the design of the device was

defective. Plaintiff's complaint thus contains three types

of claims, each sounding in negligence and breach of implied

warranty: design defect, failure to warn, and manufacturing

defect. The complaint contains no allegation regarding

Medtronic's compliance with FDA regulations, and plaintiff

has offered no evidence on that issue.

-10-
10

In her brief, plaintiff abandoned any claim of

defective design.3 At oral argument, plaintiff contended

that her allegations of Medtronic's negligence in

"alter[ing]" and "modif[ying]" the device survived her

abandonment of the design defect claims. According to

plaintiff, these claims allege that Medtronic failed to

obtain FDA approval prior to distributing the modified

pacemaker model implanted in plaintiff. It is undisputed,

however, that FDA cleared the pacemaker for marketing without

approving the product design, finding it "substantially

equivalent" to pre-MDA devices. See 42 Fed. Reg. 42,520,

42,525 (Aug. 23, 1977) (preamble to final rule) ("[A]

determination of substantial equivalence . . . relates to the

fact that the product can lawfully be marketed without

premarket approval or reclassification."); 21 C.F.R. 807.97

(a finding of substantial equivalence "does not in any way

denote official approval of the device"). FDA regulations

3. Plaintiff's brief states:
Ellen Mendes does not claim that the
entire product line from which her
pacemaker was manufactured was defective.
The claims in this action do not allege
that the safety and effectiveness of
Medtronic, Inc.'s pacemaker device, as it
was designed and approved by the FDA,
caused Ellen Mendes's injuries. The
claims in her complaint allege that Mrs.
Mendes was injured because Medtronic,
Inc. manufactured and distributed this
specific pacemaker device which was
itself individually defective and the
direct cause of her injuries.

-11-
11

have never required that the pacemaker of the model implanted

in plaintiff receive premarket approval. See 21 C.F.R.

870.3610(c). Moreover, plaintiff has not alleged that FDA's

substantial equivalence finding was improper. Therefore,

plaintiff's product line alteration and modification claims

fall from this case. If the claims are design defect claims,

they have been abandoned. And if the claims allege that FDA

failed to grant the device premarket approval, they are

meritless.

Plaintiff's abandonment of her design defect claims

also forecloses our consideration of her argument that, in

the absence of a requirement that the device receive

premarket approval, her design defect claims are not

preempted. The cases cited by plaintiff to support that

argument are thus inapposite. See, e.g., Larsen v.

Pacesetter Systems, 837 P.2d 1273, 1282 (Haw. 1992) (design

defect claims are not preempted where FDA never approved

device design because device was found to be substantially

equivalent to pre-MDA devices); see also Stamps, 984 F.2d at

1419, 1421-22 (discussing Moore v. Kimberly-Clark Corp., 867

F.2d 243, 246 (5th Cir. 1989) (design defect claims are not

preempted by requirements applicable to tampons, which are

Class II devices not subject to premarket approval)).

Plaintiff's only remaining common law claims,

sounding in negligence and breach of warranty, are

-12-
12

allegations of inadequate warnings and a manufacturing

defect. In this connection, the MDA provides that a state

requirement, if different from or in addition to an FDA

requirement, is preempted only if it "relates to" the safety

or effectiveness of the device or to any other requirement

under the Act. 21 U.S.C. 306k(a)(2). All of plaintiff's

claims relate to the pacemaker's safety and effectiveness.

See Stamps, 984 F.2d at 1422. Consequently, to complete our

preemption analysis, we must determine whether plaintiff's

negligence and implied warranty claims, if successful, would

impose requirements on Medtronic's pacemaker "different from,

or in addition to" those in the Act. 21 U.S.C. 306k(a)(1).

The common law, no less than agency regulations and

statutes, can impose "requirements" on a manufacturer. King

v. Collagen Corp., 983 F.2d at 1135; see also 21 C.F.R.

808.1(b) (MDA preempts any state requirement "whether

established by statute, ordinance, regulation, or court

decision"). The tort and implied warranty theories of

products liability are regulatory in that the "`obligation to

pay compensation can be . . . a potent method of governing

conduct and controlling policy.'" Cipollone, 112 S. Ct. at

2620 (quoting San Diego Bldg. Trades Council v. Garmon, 359

U.S. 236, 247 (1959)). Products liability "regulation" under

the common law imposes requirements by case law precedent.

-13-
13

Comparing the requirements imposed by the Act with

plaintiff's claims, we hold that her negligence and implied

warranty claims premised on inadequate warnings are

preempted. FDA regulates the content and appearance of

prescription medical device labels, including pacemaker

labels. 21 C.F.R. 801.1, 801.15, 801.109. These

regulations, which were in effect when plaintiff's particular

pacemaker was implanted, exempt such devices from the

requirement that there be directions to a layperson on how to

use the product safely, if the package describes, inter alia,

"any relevant hazards, contraindications, side effects, and

precautions" for the prescribing physician. Id. 801.109.

Plaintiff's implied warranty and negligent failure

to warn claims are premised on the manufacturer's duty to

disclose to a physician any latent, foreseeable dangers

associated with the use of a prescription product. Knowlton

v. Deseret Medical, Inc., 930 F.2d 116, 120 & n.2 (1st Cir.

1991) (discussing Massachusetts law). Although this standard

resembles the FDA requirement, the two may differ as applied.

See Jones, 430 U.S. at 526 (in determining preemption issue,

it is necessary "to consider the relationship between state

and federal laws as they are interpreted and applied, not

merely as they are written"). Applying Massachusetts law, a

factfinder could find a label deficient that complies with

FDA requirements. MacDonald v. Ortho Pharmaceutical Corp.,

-14-
14

475 N.E.2d 65, 70-71 (Mass.) (holding that "compliance with

FDA requirements, though admissible to demonstrate lack of

negligence, is not conclusive on this issue, just as

violation of FDA requirements is evidence, but not conclusive

evidence, of negligence"), cert. denied, 474 U.S. 920 (1985).

Such a finding would establish a standard for an adequate

warning "in addition to" the requirements applicable under

the Act.

Similarly, plaintiff's negligent manufacturing

claim (including her allegations of negligent manufacturing,

control, maintenance, inspection, testing, servicing,

distribution, and sale of the device) is preempted by FDA

regulations on good manufacturing practices. 21 C.F.R.

820.1-820.198. Medtronic's duty under the common law of

negligence is to use reasonable care in inspecting, testing,

and producing pacemakers. This standard and FDA's good

manufacturing practices impose analogous, but not identical

duties. FDA's good manufacturing practices regulations

require manufacturers to develop and implement "appropriate,"

"adequate," or "sufficient" quality control, quality

assurance, personnel training, environmental controls,

equipment maintenance, testing, inspection, and storage and

distribution procedures, to assure that devices are safe and

effective. See, e.g., id. 820.1, 820.5, 820.20, 820.25.

The quality assurance requirement, for example, mandates that

-15-
15

manufacturers devise and implement a protocol to ensure,

among other things, that all components, labels, packaging,

and finished devices are inspected, and either approved or

rejected. Id. 820.20(a). A factfinder could find

liability on plaintiff's negligent manufacturing claims,

applying standards differing from or adding to FDA's.

Plaintiff's implied warranty claim is also

preempted by FDA's good manufacturing practices. A

factfinder considering that claim could find Medtronic liable

if a manufacturing defect rendered plaintiff's pacemaker

unreasonably dangerous. See Mass. Gen. L. ch. 106, 2-314;

Colter v. Barber-Greene Co., 525 N.E.2d 1305, 1313 (Mass.

1988) (noting that Massachusetts law on implied warranty is

"congruent, in all material respects, with the principles

expressed in Restatement (Second) of Torts 402A (1965), the

Restatement's definition of a seller's strict liability for

harm suffered by a user or consumer of a seller's product").

This means that under Massachusetts law Medtronic could be

found liable even if it meticulously followed FDA's good

manufacturing practices. For these reasons, plaintiff's

breach of implied warranty claim is preempted.4

4. One way to ensure that a factfinder applies a standard
not adding to or differing from FDA regulations is to
supplant the common law standard with FDA's requirements. We
find nothing to support that Congress intended such a
radical, unwieldy form of preemption, however, particularly
where Congress did not intend to create a private right of
action under the Federal Food, Drug, and Cosmetic Act. See

-16-
16

Plaintiff argues that her claims are not preempted

because she is alleging that her particular device is

defective. This claim, according to plaintiff, is analogous

to a claim that the device is contaminated. She argues that

her claims are not preempted because King v. Collagen Corp.,

983 F.2d at 1134-35, excised claims arising from contaminated

devices from the body of claims preempted by the MDA.

Plaintiff's argument is based on a misunderstanding

of our remarks in King v. Collagen Corp., 983 F.2d at 1134-

35. We stated:

The language of [the MDA preemption
clause] . . . demonstrate[s] a field of
preemption which is broad, but limited.
Any state requirement which, in effect,
establishes a new substantive requirement
for the device in a regulated area such
as labeling, is preempted. 21 C.F.R.
808.1(d)(6)(ii). As the Seventh Circuit
noted, however, [the clause] does not
preempt such claims as negligent
implantation or removal of devices, or
claims arising out of contaminated

devices.

Id. (emphasis added) (citing Slater v. Optical Radiation

Corp., 961 F.2d at 1334).

The sentence regarding contaminated devices follows

our statement that "[a]ny state requirement which, in effect,

establishes a new substantive requirement for the device in a

regulated area such as labeling, is preempted." Plaintiff's

claims in this case, if successful, would establish

Rodriguez v. SK & F Co., 833 F.2d 8, 9 (1st Cir. 1987).

-17-
17

requirements in areas that FDA already regulates, i.e.,

labeling and manufacturing. Accordingly, this is not a case

where plaintiff may maintain a claim arising out of an

individually defective device. We need not address in this

case which, if any, "claims arising out of contaminated

devices" might not be preempted.

We express no opinion on whether products liability

claims are preempted only if the manufacturer complied with

applicable FDA regulations. See Reiter v. Zimmer, 830 F.

Supp. 199, 204 (S.D.N.Y. 1993) (refusing to extend preemptive

reach of MDA to negligence claim against manufacturer that

allegedly violated FDA requirements); see also Slater, 961

F.2d at 1334 (scope of preemption under MDA "is limited to

efforts by states to impose sanctions for compliance with

federal regulations"). The complaint contains no allegations

regarding Medtronic's noncompliance with FDA regulations, and

plaintiff has offered no evidence that Medtronic violated any

FDA requirement. Our holding is limited to the facts and

claims in this case.

For the foregoing reasons, the order granting

summary judgment for defendant is

Affirmed.

-18-
18