**In re MEDTRONIC POLYURETHANE INSULATED PACING LEAD PRODUCT LIABILITY LITIGATION.**

**Nos. 1, 5:95CV41.**

United States District Court,
E.D. Texas,
Texarkana Division.

March 31, 1999.

John Givens Emerson, Jr, Christopher D Wilsher, Whittington Von Sternberg, Emerson & Wilsher LLP, Houston, TX, David Parker Willis, Willis & Associates, Houston, TX, Nelson James Roach, Nix Patterson & Roach, LLP, Daingerfield, TX, for Lonnie Olden Brock, Robert Glenn Innerarity, Ezell G. Miller.

J Michael Myers, Ball & Weed, San Antonio, TX, Damon Young, Young & Pickett, Texarkana, TX, for Medtronic Inc, defendant.

### ORDER

FOLSOM, District Judge.

Before the Court is Medtronic, Inc.'s Motion for Summary Judgment on Grounds of Federal Preemption (Docket # 125 in master file). After considering the arguments of the parties, the Court finds that this motion is well taken.

## I. BACKGROUND

Seeking class certification, fifteen Plaintiffs filed eleven separate actions against Medtronic for claims related to allegedly defective pacemakers. Medtronic argues that all claims related to its Model 4004 pacemaker lead are federally preempted.[1] As explained below, the 4004 underwent a rigorous FDA approval process, the ultimate result of which was the FDA's determination that it was reasonably assured that this device is safe and effective.

This process began in 1982, when the Food and Drug Administration ("FDA") granted Medtronic an "investigational device" exemption from the pre-market approval ("PMA") process. This exemption permitted clinical trials of Model 4003, the forerunner of Model 4004.

After the trial had been completed, Medtronic submitted Model 4003 to the FDA for a complete PMA review. The FDA then referred it to a panel of experts which compared the performance of silicone and polyurethane as insulating material, and concluded that both options should be available to physicians. The FDA granted the PMA for Model 4003 in July 1986.

About two years later, Medtronic requested a PMA for Model 4004 in the form of a supplement to the request for Model 4003. To receive approval, Medtronic had to demonstrate that the 4004 was safe, effective, appropriately manufactured and truthfully labeled. Medtronic submitted to the FDA a technical manual which contained a warning about the product.

The FDA concluded that it was reasonably assured that the 4004 was safe and effective, and it granted the PMA Supplement for the 4004 in February 1989. The approval letter stated that no change in the design of the product could be made without further FDA approval.

---

1. Five Plaintiffs were fitted with this particular lead: Lonnie Brock, Robert Innerarity, Ezell Miller, Conrad Bowman and Bill Vest.

The Plaintiffs assert that the 4004 is defective. They have brought several claims against Medtronic based on tort and contact theories. Medtronic contends that because the 4004 was designed, manufactured and labeled as approved by the FDA, the Plaintiffs' claims with regard to this model are barred by federal preemption. The Plaintiffs disagree, primarily arguing that preemption does not apply because the 4004 was approved through the supplemental PMA process, as opposed to independently going through the complete PMA process.

## II. RELEVANT AUTHORITY

The preemption issue at hand is guided by the Medical Device Amendments of 1976 ("MDA"), which states in part:

> Except as provided in subsection (b) ... no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) which is different from, or in addition to, any requirement applicable under this [Act] to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this [Act].

21 U.S.C. § 360k(a).

The United States Supreme Court considered the preemptive scope of the MDA in *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). In *Lohr*, the Court found no preemption where the device at issue had not undergone PMA review, but instead received FDA approval pursuant to an exception to the PMA process.

*Lohr* outlined a three-step preemption analysis. Under this approach, preemption applies if the following can be found: (1) the FDA established specific requirements for the device at issue; (2) application of state law would impose device-specific requirements; and (3) those requirements would be inconsistent with the FDA's requirements. *See id.* at 492–501, 116 S.Ct. 2240.

## III. ANALYSIS

The instant issue is whether the Plaintiffs' claims related to the 4004 are preempted. To answer this question, the Court will go through the *Lohr* analysis, reaping the benefit of several opinions which squarely addressed some of the relevant issues.

### A. Did the FDA Establish Specific Requirements for the 4004?

The Court finds that the FDA established specific requirements for the 4004. First, it is undisputed that the 4003, an earlier version of the 4004, went through the rigorous PMA process. The Court is persuaded by authority holding that this process results in specific FDA requirements for the product at issue. *See, e.g. Mitchell v. Collagen Corp.*, 126 F.3d 902, 911 (7th Cir.1997), *cert. denied*, 523 U.S. 1020, 118 S.Ct. 1300, 140 L.Ed.2d 467 (1998); *Michael v. Shiley, Inc.*, 46 F.3d 1316, 1324 (3rd Cir.1995); *Martello v. Ciba Vision Corp.*, 42 F.3d 1167, 1169 (8th Cir. 1994); *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1421–23 (5th Cir.1993); *King v. Collagen Corp.*, 983 F.2d 1130, 1134 (1st Cir. 1993).

Second, the Court finds it irrelevant that the 4004 was approved through the supplemental PMA process. The supplemental approval mandated stringent, specific requirements for the 4004, with a heavy focus on safety. At least one federal district court undertook a lengthy analysis and found that for purposes of a preemption analysis of claims related to the 4004, there is no difference between the PMA process and the PMA Supplement process. *See Kemp v. Medtronic, Inc.*, No. C–1–97–103, slip op. at 25–27 (S.D.Ohio Jan. 12, 1999); *see also Salazar v. Medtronic, Inc.*, —— WL ——, No. C–96–425, slip op. at 3 (S.D.Tex. Aug. 8, 1997). The Court finds the reasoning in *Kemp* persuasive and applies it here.

### B. Would Application of State Law Claims Impose Device–Specific Requirements, and, if so, Would Those Requirements be Inconsistent with FDA Requirements?

The Plaintiffs' state common law actions are preempted to the extent they impose requirements that are different from or in addition to FDA requirements. *See Mitchell,* 126 F.3d at 908–909 (explaining the United States Supreme Court's holding in *Lohr*). With one exception explained below, the Court finds that all of the Plaintiffs' claims regarding the 4004 are preempted.

For the most part, the Plaintiffs claims are essentially based upon the assertion that Medtronic should have designed, manufactured and labeled the 4004 differently. If successful, the Plaintiffs would obtain a judgement that would punish Medtronic for following the FDA's strict guidelines in this regard. In other words, by issuing judgment for the Plaintiffs, this Court would be saying that Texas law requires that the 4004 be designed, manufactured, or labeled in a manner other than that approved by the FDA.

Virtually every court to address this issue after *Lohr* has found that claims such as those brought by the Plaintiffs are preempted. *See, e.g. Mitchell,* 126 F.3d at 913–14 (finding preemption of claims based on design defect, negligence, mislabeling, misrepresentation, fraud on the FDA, breach of implied warranty); *Martin v. Telectronics Pacing Sys., Inc.,* 105 F.3d 1090, 1095 (6th Cir.1997), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 850, 139 L.Ed.2d 751 (1998) (finding preemption of claims based on manufacturing defect, design defect, defective warnings, and nonconformance to express representations); *Chambers v. Osteonics Corp.,* 109 F.3d 1243, 1248 (7th Cir.1997) (finding that strict liability and breach of implied warranty claims were preempted); *Kemp,* slip op. at 25 (finding preemption of claims based on design defect, inadequate warning, nonconformance to representations, negligent design, negligent failure to warn, and breach of express and implied warranties); *Martin v. Medtronic, Inc.,* No. C–96–495 (S.D.Tex. filed August 8, 1997) (finding preemption of design defect claim); *Salazar,* slip op. at 7–8 (finding that design defect, manufacturing defect and failure to warn claims were preempted).[2]

Additionally, in a pre-*Lohr* decision, the Fifth Circuit determined that Texas common law claims related to a PMA-approved device were preempted. *See Stamps v. Collagen Corp.,* 984 F.2d 1416, 1421–23 (5th Cir.1993). The Court is of the opinion that the Fifth Circuit would reach the same result today.[3]

■ Based on the overwhelming weight of this authority, the Court finds that all of the Plaintiffs' claims related to the 4004 are preempted, with one exception. Several courts have found that preemption does not apply to claims that hinge on a defendant's failure to follow FDA requirements regarding manufacturing, design or labeling. *See, e.g. Martin,* 105 F.3d at 1101 ("As indicated by [*Lohr*] and conceded by defendant, a claim that [the defendant] did not comply with [FDA] regulations governing its device would not be preempted...."); *see also Mitchell,* 126 F.3d at 912–915 (7th Cir.1997).

**2.** The Court also finds that the Plaintiff's claim premised on Medtronic's alleged fraud on the FDA is clearly foreclosed by the Fifth Circuit's decision in *Reeves v. AcroMed Corp.,* 44 F.3d 300, 307 (5th Cir.1995).

**3.** The Court is aware of the Eleventh Circuit's recent decision in *Goodlin v. Medtronic, Inc.,* 167 F.3d 1367 (11th Cir.1999). However, the Court is of the opinion that the Fifth Circuit would, even post-*Lohr,* take a different approach. In *Goodlin,* the Eleventh Circuit found that PMA approval of the 4004 does not result in preemption. *Id.* at 1381. In doing so, the court relied heavily on its finding that the PMA process imposes no specific federal requirements. *Id.* Reaching a contrary conclusion, the Fifth Circuit has found that the PMA process does result in such a requirement. *See Stamps,* 984 F.2d at 1421. Though *Stamps* is a pre-Lohr case, there is no indication from the Fifth Circuit that this finding would change in the aftermath of *Lohr.*

The Plaintiffs have alleged that the 4004 was defectively manufactured in that "when they were distributed by Defendant, the leads deviated in a material way from their design and release specifications." *See* First Amended Original Complaint of Plaintiffs Brock, Innerarity and Miller, ¶ 35; Vest's Original Complaint, ¶ 28.[4] Thus, the Plaintiffs have sufficiently alleged that Medtronic manufactured the 4004 in a way that materially deviated from FDA requirements. Such claims survive the preemption analysis, and summary judgment on these claims is denied. *See Kemp,* slip op. at 20.

## IV. CONCLUSION

The Court finds that all of Plaintiffs' claims are preempted with the exception of the manufacturing defect claims. Accordingly, it is hereby

ORDERED that Medtronic's Motion for Summary Judgment on Grounds of Federal Preemption (Docket # 125 in master file) is GRANTED IN PART and DENIED IN PART. It is denied with regard to the Plaintiffs' manufacturing defect claims. It is granted in all other respects.

4. Plaintiff Bowman is not as specific in his complaint. He simply asserts that the 4004 leads were defectively manufactured. However, this assertion sufficiently states a claim that the manufacturing process deviated from that required by the FDA.