Robert **PARENTEAU**;  Theresa
**Parenteau**

v.

**JOHNSON & JOHNSON
ORTHOPEDICS,
INC.**

**Civ. No. 93–521–SD.**

United States District Court,
D. New Hampshire.

June 29, 1994.

---

Roger B. Phillips, Concord, NH, for plaintiffs.

Charles R. Parrott, Boston, MA, for defendant.

## ORDER

DEVINE, Senior District Judge.

In this diversity action, plaintiffs Robert and Theresa Parenteau assert claims against defendant Johnson & Johnson Orthopedics, Inc., for (1) strict liability, (2) negligence, (3) breach of implied warranty, and (4) loss of consortium. Said claims are based upon the alleged defective design of a knee prosthesis manufactured by defendant with which Robert Parenteau was fitted during knee replacement surgery in July 1988.

Presently before the court is defendant's motion for summary judgment, to which plaintiffs object.

Defendant moves for summary judgment on the ground that plaintiffs' claims are preempted by the Medical Device Amendments of 1976 to the Food, Drug and Cosmetics Act of 1938, 21 U.S.C. § 301, *et seq.* (the "MDA").

## Background

On July 14, 1988, Robert Parenteau underwent total left knee replacement surgery. During this procedure, plaintiff's left knee was allegedly replaced by a total knee prosthesis designed, manufactured, and sold by defendant. Complaint ¶¶ 7–9.

Plaintiff alleges that during the fourteen-month period following surgery he experienced pain, discomfort, and swelling in his left knee. *Id.* ¶¶ 10–11.

Plaintiff further alleges,

By October of 1990, the pain, discomfort and swelling experienced by Robert Parenteau became intolerable and his orthopaedic physician, Dr. Rajesh Kumar, recommended surgical intervention which was performed on October 8, 1990. Upon exploratory surgery of the left knee, Dr. Kumar found[,] inter alia, a crack on the medial side of the femoral component of the defendant's prosthesis.

*Id.* ¶ 12. Plaintiff's left knee prosthesis was subsequently removed and replaced. This action followed.

## Discussion

### 1. Summary Judgment Standard

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

"The nonmoving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of material fact." *Mendes v. Medtronic, Inc.,* 18 F.3d 13, 15 (1st Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). In determining whether the nonmoving party has met this burden, the court construes the evidence and draws all reasonable inferences in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

### 2. Preemption

■ The Supremacy Clause provides that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "State laws that conflict with federal laws and regulations, therefore, are preempted." *King v. Collagen Corp.,* 983 F.2d 1130, 1133

(1st Cir.) (citing, e.g., *Malone v. White Motor Corp.*, 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978)), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993).

"Consideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress.'" *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). The court interprets the MDA in light of this "presumption against preemption." *Id.,* —— U.S. at ——, 112 U.S. at 2618.

### a. The MDA Preemption Provision

The MDA contains an express preemption provision that states, in relevant part,

no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under [the federal Food, Drug, and Cosmetic Act].

21 U.S.C. § 360k(a) (Supp.1994).

"[T]he fact that Congress included [section 360k] in the MDA implies that matters beyond its reach are not preempted." *King, supra,* 983 F.2d at 1134. Therefore, to determine the extent to which plaintiffs' state law claims are preempted by section 360k(a), the court "need only identify the preemptive reach of the statute's express language." *Mendes v. Medtronic, Inc., supra,* 18 F.3d at 16 (citing *Cipollone, supra,* —— U.S. at ——, 112 S.Ct. at 2628 (plurality); *id.,* at ——, 112

S.Ct. at 2625 (Blackmun, J., concurring in part and dissenting in part)).

The FDA's regulations interpreting section 360k(a) "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

FDA regulations state that under section 360k(a),

no State or political subdivision of a State may establish or continue in effect any requirement with respect to a medical device intended for human use having the force and effect of law (whether established by statute, ordinance, regulation, or court decision), which is different from, or in addition to, any requirement applicable to such device under any provision of the act and which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under the act.

21 C.F.R. § 808.1(b). The FDA regulations further provide "that preemption does not apply when the FDA has issued no regulations or other requirements specific to the particular device. 21 C.F.R. § 808.1(d)[1]." *King, supra,* 983 F.2d at 1134. *See also Slater v. Optical Radiation Corp.,* 961 F.2d 1330, 1331 (7th Cir.) (MDA preemption "is limited to cases in which the FDA 'has established specific counterpart regulations [to the challenged state requirements] or there are other specific requirements applicable to a particular device under' the federal act" (quoting 21 C.F.R. § 808.1(d))), *cert. denied,* —— U.S. ——, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992).

The first step in determining whether plaintiffs' claims are preempted by section 360k(a) is to "outline the [federal Food, Drug, and Cosmetic Act's] requirements applicable to the device." *Mendes, supra,* 18 F.3d at 16. The court must then "scrutinize plaintiff's claims, to determine whether the

---

1. Section 808.1(d) states, inter alia,

State or local requirements are preempted only when the [FDA] has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific [FDA] requirements.

successful litigation of any of them would 'establish or continue in effect' a 'different' or 'addition[al]' requirement." *Id.* (quoting 21 U.S.C. § 360k(a)); *see also King, supra,* 983 F.2d at 1134 (under section 360k(a) the court "must determine whether [plaintiff's] products liability claims give rise to state law requirements in addition to or different from those mandated by the FDA").

### b. Requirements Applicable to the Knee Prosthesis

The knee prosthesis in question is a Class II medical device.[2] As a Class II device, the knee prosthesis is subject to certain general controls regarding, inter alia, labeling, reporting, and manufacturing. 21 U.S.C. § 360c(a)(1)(A)–(B); 21 C.F.R. § 860.3(c)(1)–(2). Class II devices may also "be subject to recommendations, guidelines, post-marketing surveillance, the development of patient registries, and even the promulgation of specific performance standards, should the FDA deem them a sufficient health hazard as to require strict product specifications or warnings." *Stamps v. Collagen,* 984 F.2d 1416, 1418 (5th Cir.) (citing *see* 21 U.S.C. § 360c(a)(1)(B)), *cert. denied,* — U.S. —, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *see also* 21 C.F.R. § 860.3(c)(2).

The knee prosthesis is subject to 21 C.F.R. § 888.3560, entitled "Knee joint patellofemorotibial polymer/metal/polymer semi-constrained cemented prosthesis," which provides:

(a) *Identification.* A knee joint patellofemorotibial polymer/metal/polymer semi-constrained cemented prosthesis is a device intended to be implanted to replace a knee joint. The device limits translation and rotation in one or more planes via the geometry of its articulating surfaces. It has no linkage across-the-joint. This generic type of device includes prostheses that have a femoral component made of alloys, such as cobalt-chromium-molybdenum, and a tibial component or components and a retropatellar resurfacing component made of ultra-high molecular weight polyethylene. This generic type of device is limited to those prostheses intended for use with bone cement (§ 888.-3027).

(b) *Classification.* Class II. 21 C.F.R. § 888.3560.

The court finds that the purpose of this regulation is to classify knee joint patellofemorotibial polymer/metal/polymer semi-constrained cemented prostheses as Class II medical devices. *See* 21 C.F.R. § 888.1(a)–(b). Other than this identification and classification regulation, the parties have not identified, nor has this court discovered, any other specific FDA requirements applicable to the knee prosthesis at issue.

### c. Plaintiffs' Claims

Plaintiffs' claims of strict liability, negligence, breach of implied warranty, and loss of consortium are each based upon plaintiffs' contention that the Class II knee prosthesis with which Robert Parenteau was fitted in 1988 was defectively designed.

Defendant asserts that plaintiffs' claims are preempted under section 360k(a) because said claims, if successfully litigated, would create "requirements" which are different from or in addition to the requirements to which the knee prosthesis is subject under the MDA.

According to the FDA, "the scope of preemption is limited to instances where there are specific FDA requirements applicable to a particular device or class of devices.... The phrase 'or in addition to, any requirement applicable under this Act to the device' means that an FDA requirement must exist before preemption can occur."

*Moore v. Kimberly–Clark Corp.,* 867 F.2d 243, 245 (5th Cir.1989) (quoting *Rinehart v. International Playtex, Inc.,* 688 F.Supp. 475 (S.D.Ind.1988) (quoting 43 Fed.Reg. 18,662 (1978))); *see also infra* note 1.

■ Where specific FDA regulations regarding the design of a particular medical device have not been found, state-law claims

---

**2.** Under the MDA, medical devices are classified as Class I, Class II, or Class III, according to the level of regulation and control the FDA deems necessary to provide a reasonable assurance of safety and effectiveness. 21 U.S.C. § 360c; 21 C.F.R. §§ 860.1–860.3.

of defective design are not preempted under section 360k(a) of the MDA. *See Moore v. Kimberly–Clark, supra,* 867 F.2d at 246–47 (finding that defective design claims are not preempted by applicable identification and classification regulations or by specific labeling and warning requirements); *Elbert v. Howmedica, Inc.,* 841 F.Supp. 327, 331 (D.Haw.1993) (holding that "the identification parameters of the knee joint device in § 888.-3560 are not 'requirements' that would trigger federal preemption under §§ 360k and 808.1(d)"). *But see Cameron v. Howmedica, Div. of Pfizer Hosp. Products Group, Inc.,* 820 F.Supp. 317, 320–21 (E.D.Mich.1993) (holding that the identification and classification regulation applicable to hip joint prostheses at 21 C.F.R. § 888.3310 "applies to the design of hip replacement parts" and therefore preempts state law challenges to the design of said parts).[3]

The court finds that the identification and classification regulation at 21 C.F.R. § 888.-360, and the general controls to which all Class II devices are subject, do not regulate the design of the knee prosthesis at issue. Accordingly, the court further finds that plaintiffs' state-law claims are not preempted under section 360k(a) of the MDA by the FDA regulations proffered by defendant. Defendant's motion for summary judgment is therefore denied.

## Conclusion

For the reasons set forth herein, defendant's motion for summary judgment (document 8) is denied.

SO ORDERED.

---

**3.** In *Cameron,* the court's finding of preemption was based on its determination that 21 C.F.R. § 888.3310 "plainly discusses the design of hip replacement devices." *Id.* at 320. The *Cameron* court's analysis fails to recognize that section 888.3310 discusses the design of hip replacement devices for the purpose of identifying and classi- fying such devices under the MDA. This court disagrees that the identification and classification of hip replacement devices by section 888.3310 amounts to a "requirement" that preempts challenges to the design of such devices. Accordingly, this court declines to follow the *Cameron* decision.