Anna Mae DOW, et al.

v.

**BAXTER HEALTHCARE
CORPORATION.**

Civ. A. No. 94–30099–MAP.

United States District Court,
D. Massachusetts.

Sept. 21, 1995.

Pamela Manson, Ely & King, Springfield, MA, for plaintiffs.

Joseph J. Leghorn, Ellen Rosenberg, Lydia A. Clougherty, Warner & Stackpole, Boston, MA, for defendant.

*MEMORANDUM REGARDING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT*

PONSOR, District Judge.

This is a product liability action arising from injuries allegedly sustained by the

plaintiff Anna Mae Dow as a result of the use of a defective foley catheter during surgery. The catheter in question was manufactured by the defendant Baxter Healthcare Corporation ("Baxter"). Co-plaintiff Roger W. Dow, plaintiff Anna Mae's husband, asserts a claim for loss of consortium.

The defendant moved for summary judgment on all counts of the complaint, contending that the Medical Device Amendments ("MDA") to the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 360(c) *et seq.*, preempts all of plaintiffs' causes of action. This motion was referred to Magistrate Judge Neiman, who recommended that it be allowed with regard to plaintiff's claims of negligent manufacture and distribution, breach of implied warranties and breach of express warranty. Judge Neiman recommended that the defendant's motion be denied with respect to plaintiffs' claims for negligent design, violation of Mass.Gen.L. ch. 93A and loss of consortium. The court will adopt the Report and Recommendation, except with regard to plaintiff's claim for breach of warranty, as to which the defendant's motion will be denied, for the following reasons.

■ First, a recent First Circuit decision, *Talbott v. C.R. Bard, Inc.*, 63 F.3d 25 (1st Cir.1995), provides clear authority for the magistrate judge's recommendation that the defendant's motion for summary judgment be allowed as to the plaintiff's claims for negligent manufacture, negligent distribution and breach of express warranty.

■ Second, the *Talbott* decision at n. 3 also presents strong inferential support for the magistrate judge's recommendation that the motion for summary judgment as to the negligent design claim be denied. Here, the catheter in question "had not gone through the pre-market approval process, but instead was marketed under § 510(k) as 'substantially equivalent' to an existing device." At 31, n. 3. This consideration drastically undercuts defendant's preemption argument. See *Lohr v. Medtronic*, 56 F.3d 1335 (11th Cir. 1995), cited in *Talbott*. This court agrees with the case of *Parenteau v. Johnson &*

*Johnson Orthopedics, Inc.*, 856 F.Supp. 61 (D.N.H.1994) that "preemption does not apply when the FDA has issued no regulations or other requirements specific to the particular device." *Id.*, at 63, quoting *King v. Collagen Corp.*, 983 F.2d 1130, 1134 (1st Cir.1993).

■ Third, having denied the motion for summary judgment with regard to negligent design, the court must decline to adopt the magistrate judge's recommendation with regard to the claim for breach of warranty based upon defective design. The Supreme Judicial Court has made it clear that proof of negligence necessarily implies proof of a breach of warranty. *Colter v. Barber-Greene Co.*, 403 Mass. 50, 62, 525 N.E.2d 1305 (1988). This proposition is well recognized in the First Circuit. *Kotler v. American Tobacco Co.*, 926 F.2d 1217 and 1229–1230 (1st Cir.1990); *Allen v. Chance Mfg. Co., Inc.*, 873 F.2d 465, 466, n. 2 (1st Cir. 1989). Thus, if plaintiffs can prove negligent design, they will necessarily have proved a breach of warranty. It follows from this that the claims under ch. 93A and for loss of consortium are also viable.

For the foregoing reasons, the court hereby adopts the magistrate judge's recommendation in part. Defendant's Motion for Summary Judgment is ALLOWED with regard to plaintiff's claims for negligent manufacture and distribution and breach of express warranty. The Motion for Summary Judgment is DENIED with regard to claims for negligent design, breach of warranty based upon negligent design, violation of Mass.Gen.L. ch. 93A and loss of consortium.

The clerk will contact counsel with a date for a conference to establish a schedule for completion of all pretrial proceedings and trial.

A separate order will issue.

*REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 21)*

NEIMAN, United States Magistrate Judge.

## I.  INTRODUCTION

This action arose out of personal injuries that Plaintiff Anna Mae Dow claims she sus-

tained as a result of the use of a foley catheter during an exploratory laparotomy. The catheter was manufactured by Defendant Baxter Healthcare Corporation ("Baxter"). Plaintiff Roger W. Dow, Anna Mae's husband, asserts a claim for loss of consortium. Baxter has moved for summary judgment on all counts of the Dows' complaint pursuant to Federal Rule of Civil Procedure 56. Baxter's motion has been referred to the Court for a report and recommendation pursuant to Rule 3 of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts. 28 U.S.C. § 636(b)(1)(B). The Court recommends granting Baxter's motion in part and denying it in part for the reasons set forth below.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background of Present Action

Ms. Dow was admitted to the Cooley Dickinson Hospital in Northampton, Massachusetts, for an exploratory laparotomy on February 26, 1991. During the procedure, doctors inserted a foley catheter into Ms. Dow that was designed, manufactured, and distributed by Baxter. The catheter could not be removed following surgery because the balloon failed to deflate. After conventional methods were unsuccessful in deflating the balloon and removing the catheter, a cystoscopy was performed on March 2, 1992. In her complaint, Ms. Dow alleges severe bladder and urological problems dating back to the cystoscopy.

Specifically, Ms. Dow asserts claims of (1) negligent design, manufacture, and distribution of the foley catheter (Count I); (2) breach of the implied warranties of merchantability and fitness for a particular purpose (Count II); (3) breach of an express warranty (Count III); and (4) violation of Massachusetts General Laws Chapter 93A (Count V). Plaintiff Roger W. Dow is asserting a claim for loss of consortium (Count IV). In response, Baxter claims that the Medical Devise Amendments ("MDA") to the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 360c, et seq. pre-empts all of Plaintiffs'

claims and does not independently provide any remedy.

### B. The MDA And Its Implementing Regulations

Congress enacted the MDA in 1976. The MDA is a system of regulation for all medical devices which directs the Food and Drug Administration ("FDA") to classify each medical device intended for human use. 21 U.S.C. § 360c(a)(1). The three classifications the FDA utilizes establish an ascending order of controls and oversight. Class I is comprised of devices (e.g., tongue depressions) which require only the most general of controls. Class II (e.g., tampons) includes devices which require compliance with both general controls and applicable performance standards promulgated by the FDA. The performance standards include annual registration, labeling requirements, prohibitions against misbranding and adulteration, and good manufacturing practices. 21 U.S.C. § 360c; 21 U.S.C. § 360k; 21 C.F.R. § 860.3(c)(1)–(2). The FDA has classified the foley catheter, at issue here, as a Class II medical device. 21 C.F.R. § 876.5130. Finally, Class III includes devices (e.g., pacemakers) which pose potential unreasonable risks of injury. The controls exercised over Class II devices are insufficient to determine safety or effectiveness of Class III devices. Accordingly, Class III devices must be generally approved prior to being marketed. See 21 U.S.C. § 360e and § 360c(a)(2)(C).

### C. The FDA's 510(k) Approval Process

Section 510(k) of the MDA governs "substantially equivalent" devices. 21 U.S.C. § 360(k). Each class of devices undergoes substantially the same 510(k) process. 21 C.F.R. §§ 807.87, 807.92, and 807.93. The process applies to any device which the manufacturer submits as, and the FDA finds to be "substantially equivalent" in design and function to a "predicate device", i.e., a device which was on the market prior to the effective date of the MDA or was lawfully sold as a substantially equivalent device. 21 U.S.C. § 360c(f) and (i); 21 C.F.R. § 814.80. FDA regulations govern the form and substance of the information required for a submission

under Section 510(k), including proposed labeling. 21 C.F.R. §§ 807.87 and 807.92. The FDA may request additional information in an effort to determine whether the device is substantially equivalent to a predicate device. 21 C.F.R. § 807.100. The process has been described as follows:

Under section 510(k), devices that are shown to be substantially equivalent to a device on the market before the MDA [was] passed (a "predicate" device) can gain approval without submitting to the type of premarket approval required for a new device. At least ninety days before marketing its device, a manufacturer must submit to the FDA information that the device has the same intended use as a pre-Amendment device and that it has the same technological characteristics. Alternatively, a device may satisfy the 510(k) process even if it has different technological characteristics, as long as these characteristics do not raise different questions of safety and effectiveness from the predicate device. If a device meets the equivalence requirement, it can enter the marketplace without further scrutiny.

Gail H. Javitt, *I've Got You Under My Skin And I Can't Get Redress: An Analysis of Recent Case Law Addressing Preemption of Manufacturer Liability for Class III Medical Devices*, 49 Food & Drug L.J. 553, 571 (1994) (footnotes excluded) ("Javitt, *I've Got You Under My Skin* "). The FDA's substantial equivalence determination does not denote official FDA approval of the device. 21 C.F.R. § 807.97. The FDA retains the power to withdraw its approval of a device if it subsequently determines that the device has become unsafe or that its labeling is inadequate. 21 U.S.C. § 360e(e)(1)–(3).

In the present case, American Pharmaceutical, a division of Baxter, filed a 510(k) notification with the FDA on August 19, 1981, indicating its intent to market the foley catheter. See Memorandum in Support of Baxter's Motion for Summary Judgment ("Memorandum"), Exhibit 1A (Docket No. 22). On September 15, 1981, at the FDA's request, Baxter provided the FDA with additional information which included a sample catheter and packaging information. Memorandum, Exhibits 1B and 1C. The FDA notified Baxter on October 27, 1981, that it had determined the catheter to be "substantially equivalent" to a predicate device. Memorandum, Exhibit 1D. Baxter did not make any changes to the catheter warranting further FDA review once it received 510(k) approval. Memorandum, Exhibit 1, paragraph 11.

### D. *Additional State Requirements*

The MDA allows states to apply to the FDA for approval to impose additional state requirements on medical devices. 21 U.S.C. § 360k(b). Such state requirements may be more stringent than an MDA requirement or may be needed because of local conditions, as long as the additional requirements do not cause noncompliance with the MDA. *Massachusetts v. Hayes*, 691 F.2d 57 (1st Cir.1982). Such requests are rare. Massachusetts has not applied for such additional state regulation with regard to the foley catheter.

### III. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). See *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994); *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 7 F.3d 1047, 1050 (1st Cir.1993), citing *Mesnick v. General Electric Co.*, 950 F.2d 816 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). The facts must be viewed in the light most favorable to the non-moving party. *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 7 F.3d at 1050. The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic*, 18 F.3d 13, discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

A "genuine" issue is one that only a finder of fact can properly resolve because it may reasonably be resolved in favor of either party and a "material" issue is one that affects the outcome of the suit. *Collins v. Martella*, 17 F.3d 1, 3 n. 3 (1st Cir.1994),

citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250, 106 S.Ct. 2505, 2511, n. 3, 91 L.Ed.2d 202 (1986). Mere allegations or conjecture unsupported in the record are insufficient to raise a genuine issue of material fact. *Horta v. Sullivan*, 4 F.3d 2, 11 (1st Cir.1993). Absent a genuine dispute of material fact, questions of law are appropriate for resolution on summary judgment. *Jimenez v. Peninsular & Oriental Steam Navigation Co.*, 974 F.2d 221, 223 (1st Cir.1992). Appellate review of summary judgment is plenary, since the standard of review requires the trial court to make a legal determination rather than to engage in fact-finding. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990).

In the present case, there are no material factual issues in dispute, except with regard to Plaintiffs' claim of negligent design. Accordingly, the Court recommends that Baxter be granted partial summary judgment as a matter of law. The MDA preempts the Dows' state law claims raising negligent manufacture, negligent distribution, breach of implied warranties, and breach of express warranty. These claims seek to establish requirements under common law which differ from the existing requirements of the MDA. However, the Court recommends that Baxter's motion for summary judgment be denied with regard to Plaintiff's claim for negligent design because there are material facts at issue. As a result of the survival of the negligent design claim, Ms. Dow's claims under Chapter 93A and Mr. Dow's claim of loss of consortium, as derivative claims, should also survive Baxter's motion for summary judgment. The Court's reasoning is set forth below.

## IV. DISCUSSION

The issue before the Court is whether the Dows' various claims of damage caused by Baxter's Class II medical device, which obtained 510(k) approval based on its substantial equivalence to a predicate medical device, are pre-empted by the MDA. While there have been a number of court decisions addressing pre-emption by the MDA, including decisions in this Circuit, the particular facts of the present case intersect in a way not previously addressed. In the current action, three distinct features converge as follows: (a) the claim of negligent *design* (b) of a *Class II* device (c) approved through the *510(k) process*.

The doctrine of pre-emption has its roots in the Supremacy clause of the United States Constitution, Art VI, Cl.2, which dictates that federal law is the "supreme law of the land." The Supremacy clause renders invalid any state law which interferes with or is contrary to a valid federal statute. The Court must look at the express language of the federal statute in order to determine its preemptive effect, if any. *Mendes v. Medtronic*, 18 F.3d at 16. When a federal statute contains an express preemption provision, the Court is to determine the scope of preemption by a fair reading of that provision. *Cipollone v. Liggett Group*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).[1]

The MDA expressly prohibits a state from establishing "any requirement" relating to the device that differs at all from the federal requirements:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) which is different from, or in addition to, any requirement applicable under this Act to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act.

21 U.S.C. § 360k(a). The implementing regulations, promulgated by the FDA, define "any requirement" to include any court decision which is different from the federal requirements. 21 C.F.R. § 808.1(b). The implementing regulations also provide that

---

1. In cases involving express preemption provisions, the Supreme Court found that *implied* preemption has little role. *Cipollone*, 505 U.S. at ——, 112 S.Ct. at 2618. "At best, *Cipollone* supports an inference that an express pre-emp-

tion clause forecloses implied pre-emption; it does not establish a rule". *Freightliner Corporation v. Ben Myrick, et ux, et al.*, —— U.S. ——, ——, 115 S.Ct. 1483, 1488, 131 L.Ed.2d 385 (1995).

state requirements are preempted only when the FDA has established specific requirements applicable to a particular device. 21 C.F.R. § 808.1(d). With the inclusion of an express preemption clause in the MDA, therefore, Congress has indicated that only matters beyond the specific language of the provision are not preempted. Further, where Congress has expressly preempted state common law actions, its failure to provide a federal remedy will not defeat Congressional intent to preempt state law. *Lee v. E.I. Du Pont de Nemours & Co.*, 894 F.2d 755, 757 (5th Cir.1990).

Congress created the MDA in a manner that would balance the need for regulation to protect public health with the government's interest in allowing innovative devices to be marketed expeditiously without the costs attributable to excess regulation. *King v. Collagen Corp.*, 983 F.2d 1130, 1138 (1st Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993). The preemption provision in the MDA expresses a concern that interstate commerce cannot be unduly burdened by numerous and varying state requirements which differ from federal government's requirements applicable to a medical device. H.R.Rep. No. 853, 94th Cong., 2d Sess. 45 (1976).

Although the MDA has as its principal emphasis the protection of the individual user, it was also intended to encourage research and development, as well as permit new and improved devices to be marketed without delay. U.S. Code Congressional and Administrative News, 94th Congress, Second Session, Vol. 3, p. 1070 *et seq.* The MDA requirements have often been considered the maximum requirements afforded the individual user. *Id.* Thus, Congressional policy justifies the promotion and marketing of medical devices, despite the potential cost of a few individuals who may lack redress for the failure of the device on occasion. "Perfection is impossible and a few individuals may be denied full protection at the cost of benefitting the rest." *King v. Collagen,* 983 F.2d at 1138. Despite the apparently broad pre-emption provision in the MDA, such pre-emption only applies to any state requirement, however defined, which differs from an applicable federal requirement which specifically relates to the safety or effectiveness of the particular device. 21 C.F.R. § 808.1(d). It is here where court decisions diverge.

In *King v. Collagen Corp.*, the First Circuit found that the MDA expressly preempted claims against a manufacturer of a Class III medical device which had received premarket approval. *King v. Collagen* has "provided the blueprint for the later device preemption cases ..." Javitt, *I've Got You Under My Skin,* at 554. Other courts have followed *King* in granting summary judgment to manufacturers of Class III medical devices which received premarket approval by the FDA. See *Bravman v. Baxter Healthcare Corp.*, 842 F.Supp. 747 (S.D.N.Y. 1994) (heart valve); *Kemp v. Pfizer, Inc.*, 835 F.Supp. 1015, 1023 (E.D.Mich.1993) (heart valve); *Reiter v. Zimmer, Inc.*, 830 F.Supp. 199 (S.D.N.Y.1993) (bone cement); *Michael v. Shiley, Inc.*, 46 F.3d 1316 (3rd Cir.1995) (heart valve); *Talbott v. C.R. Bard,* 865 F.Supp. 37 (D.Mass.1994) (heart catheter).

The *King* court followed the rationale of *Cipollone v. Liggett Group, Inc., supra,* and affirmed the district court's decision to grant summary judgment to the manufacturer. The MDA and its implementing regulations were held to preempt plaintiff's claims to the extent they sought to impose requirements under state law which differed from MDA requirements. Specifically, the court held that the MDA pre-empted plaintiff's claims of strict liability, warranty of merchantability, negligence in the design, manufacture, marketing and sale of the device, mislabeling of the device, misrepresentation, and failure to warn. The court also held that the MDA pre-empted plaintiff's claim that the device manufacturer fraudulently obtained FDA approval.

In contrast to the instant case, the Court notes two distinct matters. First, *King* concerned a Class III device which "is subject to the most extensive pre-marketing approval requirements imposed by the MDA and to similarly extensive regulation post-approval." *King,* 983 F.2d at 1131. The court noted that the FDA retained "rigid control over the entirety of the labeling and packaging of class III products, largely displacing the abil-

ity of manufacturers to make additional claims." *Id.* at 1135. In the instant case, however, a Class II device is involved, which entails less FDA scrutiny. Second, the FDA imposed regulatory requirements with respect to labeling, design, and manufacturing on the particular Class III medical device at issue in *King. Id.* at 1134. As the court indicated, FDA regulations provide that "preemption does *not* apply when the FDA has issued no regulations or other requirements specific to the particular device. 21 C.F.R. § 808.1(d)." *Id.* at 1134 (emphasis added). In the present action, Plaintiffs assert that the FDA regulatory scheme concerning the foley catheter is quite narrow in scope and that preemption therefore does not apply.

In *Stamps v. Collagen Corp.*, 984 F.2d 1416 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993), the Fifth Circuit also relied on *Cipollone* and held that the MDA expressly preempted state common law claims for (a) inadequate labeling, (b) failure to warn, and (c) defective design. While *Stamps* concerned a Class III device, as in *King*, the court relied on its previous decision in *Moore v. Kimberly–Clark Corp.*, 867 F.2d 243 (5th Cir.1989), *reh'g denied,* 873 F.2d 297 (5th Cir.1989), which held that the MDA pre-empted state-law based failure-to-warn and labeling claims regarding a *Class II* medical device: "The Class III regulatory structure, no less than that of Class II, involves the FDA in considerable oversight regarding proposed package labeling of a device." *Stamps,* 984 F.2d at 1422. However, the claims for defective design survived pre-emption in *Moore;* only the claims of inadequate warning and labelling were pre-empted. In the instant case, the Dows are most adamant in asserting that their claim for negligent design should survive pre-emption.

In this regard, *Stamps'* explicitly distinguished *Larsen v. Pacesetter Sys. Inc.*, 837 P.2d 1273 (Haw.1992). In *Larsen,* the court found that a patient's claims arising from the recall of a Class III pacemaker were *not* pre-empted by the MDA. The court in *Stamps,* which in applicable part found that the MDA did preempt the defective design claim be-

fore it, distinguished *Larsen* on the grounds that the defective design claim involved a "substantially equivalent" device:

> Larsen is distinguishable from the instant case in that it involved a device that passed through a less stringent Class III review process by virtue of its being "substantially equivalent" to devices already allowed to be marketed. As the court stated, "Although a determination of substantial equivalence involves a review by FDA of what is known of the safety and effectiveness of the devices, and may even include some additional clinical testing, it is not equivalent to an approval by the FDA of the device's safety and effectiveness." *Larsen,* 837 P.2d at 1282 (citing H.R.Rep. No. 8081, 101st Cong., 2d Sess. 14, reprinted in 1990 U.S.C.C.A.N. 6305, 6307; 21 C.F.R. § 807.97 (FDA's acceptance of claim of substantial equivalence does not denote official approval of the device)). The instant devices are not "substantially equivalent" to marketable devices; rather, they have been subjected to the full rigor of the PMA [premarket approval] process. While we do not rely upon this ground, one could argue that 21 C.F.R. § 807.97's explicit statement that the FDA does not officially approve "substantially equivalent" devices creates at least the presumption—by way of the doctrine *expressio unius est esclusio alterius*—that the FDA does officially approve those products it scrutinizes through the regular Class III PMA process. Such official approval, of course, strongly would imply that federal preemption is present.

*Stamps,* 984 F.2d at 1423, n. 6. The instant case involves just such reliance on a predicate device. Since the 510(k) process is essentially the same for both Class II and Class III devices, the reasoning in *Larsen,* and indeed *Stamps,* causes this Court to be cautious in finding pre-emption, at least with regard to the claim of negligent design.

In *Mendes v. Medtronic, Inc., supra,* however, the First Circuit addressed preemption claims with respect to a Class III pacemaker which passed through the less stringent 510(k) process. The court specifically acknowledged that no premarket approval had

been obtained. *Id.* at 17.[2] Nevertheless, the court held that the MDA preempted state common law claims for failure to warn and manufacturing defect. *Id.* at 15. Compare *Oja v. Howmedica, Inc.*, 848 F.Supp. 905 (D.Colo.1994). However, *Mendes* did not determine pre-emption with respect to plaintiff's claim for negligent design because it had been withdrawn:

> Plaintiff's abandonment of her design defect claims also forecloses our consideration of her argument that, in the absence of a requirement that the device receive premarket approval, her design defect claims are not preempted. The cases cited by plaintiff to support that argument are thus inapposite. See, e.g., *Larsen v. Pacesetter Systems*, 74 Haw. 1, 837 P.2d 1273, 1282 (1992) (design defect claims are not preempted where FDA never approved device design because device was found to be substantially equivalent to pre-MDA devices); see also *Stamps*, 984 F.2d at 1419, 1421–22 (discussing *Moore v. Kimberly–Clark Corp.*, 867 F.2d 243, 246 (5th Cir. 1989) (design defect claims are not preempted by requirements applicable to tampons, which are Class II devices not subject to premarket approval)).

*Mendes*, 18 F.3d at 17. In the instant case, the negligent design claim is the only viable claim left, given the First Circuit's holdings in both *Mendes* and *King*.[3]

Baxter has referred the Court to several federal court decisions which, relying on and expanding *Mendes*, held that the MDA preempts design defect claims for 510(k) devices. The Court, however, is not persuaded. Two decisions contain only scant analyses of the 510(k) process. See *Bollier v. Medtronic, Inc.*, 1993 WL 734843 (S.D.Tex.1993) (No. H–92–2439) and *Seque v. Mentor Corporation*, (M.D.La.1995) (Civil Action No. 93–955–

A). See Supplemental Authority In Support of Baxter's Motion for Summary Judgment (Docket 29). Three other decisions, while more comprehensive in their analyses of the 510(k) process, concerned Class III devices for which clinical test data was provided and subjected to FDA scrutiny. See *Duvall v. Bristol–Myers Squibb Company*, 1994 WL 591534 (D.Md.1994); *English v. Mentor Corp.*, 1994 WL 263353 (E.D.Pa.1994); and *Bokis v. American Medical Systems, Inc.*, 875 F.Supp. 748 (W.D.Okla.1995). Baxter's 510(k) notification to the FDA contained no such clinical data. See Memorandum, Exhibit 1A. In response, the FDA requested additional information, including a sample foley catheter and packaging information, Memorandum, Exhibit 1, paragraph 7, although the exact scope of the additional information requested is not evident. Memorandum, Exhibit 1B. The information actually provided by Baxter did not include any clinical data.

This Court cannot assume that the First Circuit would expand its holdings in *King* and *Mendes* to claims of design defects in § 510(k) "substantial equivalence" Class II devices. In fact, the First Circuit in *King* relied on the extensive premarket approval requirements imposed by the MDA as well as the rigid control exercised by the FDA over labelling and packaging. See also *Talbott v. C.R. Bard*, 865 F.Supp. 37 (D.Mass. 1994). And the First Circuit's finding of pre-emption in *Mendes*, which concerned a device found substantially equivalent through the 510(k) process, was directed only at claims for failure to warn and manufacturing defects. The question of negligent design was not addressed. "Fewer than two percent of submissions under the 510(k) process are found to be not substantially equivalent." Javitt, *I've Got You Under My Skin*, at 571,

---

**2.** To quote the court:

> It is undisputed, however, that FDA cleared the pacemaker for marketing without approving the product design, finding it "substantially equivalent" to pre-MDA devices. See 42 Fed. Reg. 42,520, 52,525 (Aug. 23, 1977) (preamble to final rule) ("[A] determination of substantial equivalence ... relates to the fact that the product can lawfully be marketed without premarket approval or reclassification."); 21 C.F.R. § 807.97 (a finding of substantial equiv-

alence "does not in any way denote official approval of the device"). FDA regulations have never required that the pacemaker of the model implanted in plaintiff receive premarket approval. See 21 C.F.R. § 870.3610(c). Moreover, plaintiff has not alleged that FDA's substantial equivalence finding was improper.

**3.** It should be noted that Plaintiff here, unlike the plaintiff in *Mendes*, is not making any claim that the foley catheter was *individually* defective.

citing Report by the Subcommittee on Oversight and Investigations, House Comm. on Energy and Commerce, *Less than the Sum of its Parts: Reforms Needed in the Organization, Management, and Resources of the Food and Drug Administration's Center for Devices and Radiological Health*, 103 Cong. 1st Sess. (Coman–Prunt 103–N 1993) at 8. The fact that the 510(k) process enables manufacturers to enter the market quickly and apparently without great effort mitigates against pre-emption of claims of negligent design.

Another court in this Circuit denied summary judgment in just such a Class II design defect case, finding that neither the MDA nor the FDA regulations preempted the plaintiff's state law claims. See *Parenteau v. Johnson & Johnson Orthopedics*, 856 F.Supp. 61 (D.N.H.1994). In *Parenteau*, the plaintiff made claims for strict liability, negligence, breach of implied warranty, and loss of consortium, alleging that a Class II knee prosthesis was defectively designed. The court held that the identification and classification regulations at 21 C.F.R. § 888.3560 regarding knee prosthetic devices, as well as the general controls to which all Class II devices are subject, did not regulate the *design* of the knee prosthesis at issue. *Parenteau*, 856 F.Supp. at 64–65. The court followed the analytical steps set forth in *Mendes:*

> [the] first task is to outline the Act's requirements applicable to the device. Thereafter, we scrutinize plaintiff's claims, to determine whether the successful litigation of any of them would "establish or continue in effect" a "different" or "additional" requirement. 21 U.S.C. § 360k(a). This analysis determines whether plaintiff's claims are preempted. 21 C.F.R. § 808.1(d) (state requirements are

preempted where "there are ... specific requirements applicable to a particular device under the act").

*Mendes,* 18 F.3d at 16. The *Parenteau* court found that there were no specific FDA regulations for the design of the knee prosthesis other than those for identification and classification. See also *Moore v. Kimberly–Clark, supra* (defective design claims not preempted by identification and classification regulations or by specific liability and warning requirements); *Elbert v. Howmedica, Inc.,* 841 F.Supp. 327 (D.Haw.1993) ("identification" parameters of knee joint device are not "requirements" which invoke federal preemption).

In the present case, 21 C.F.R. § 876.5130 provides for the identification and classification of the foley catheter as a Class II medical device.[4] As such, it is subject to general controls relating to manufacturing, labeling, and reporting only. 21 U.S.C. § 360c(a)(1)(B); 21 C.F.R. § 860.3(c)(1)–(2). "Class II devices may also 'be subject to recommendations, guidelines, post-marketing surveillance, the development of patient registries, and even the promulgation of specific performance standards, should the FDA deem them a sufficient health hazard as to require strict product specifications or warnings.'" *Parenteau, supra* at 64, citing *Stamps v. Collagen,* 984 F.2d 1416, 1418 (5th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993). See also 21 C.F.R. § 860.3(c)(2). However, except for the identification and classification regulation under 21 C.F.R. § 876.5130 and the general controls, no *specific* regulations or requirements relating to the design of the catheter are evident. In fact, the FDA's October 27, 1981, notification of approval of Baxter's foley catheter is only a certification to market the catheter. See Memorandum Exhibit 1D.

---

**4.** § 876.5130 Urological catheter and accessories.

    (a) Identification. A urological catheter and accessories is a flexible tubular device that is inserted through the urethra and used to pass fluids to or from the urinary tract. This generic type of device includes radiopaque urological catheters, ureteral catheters, urethral catheters, coude catheters, balloon retention type catheters, straight catheters, upper urinary tract catheters, double lument female urethro-

graphic catheters, disposable ureteral catheters, male urethrographic catheters, and urological catheter accessories including ureteral catheter stylets, ureteral catheter adapters, ureteral catheter holders, ureteral catheter stylets, ureteral catheterization trays, and the gastro-urological irrigation tray (for urological use).

    (b) Classification. Class II (performance standards).

The FDA specifically stated that "... [t]his letter should not be construed as approval of your device or its labeling." The letter also states that the device will be subject to only general controls. See also 21 C.F.R. 807.97.

Following the court's reasoning in *Mendes*, the Court has no choice but to recommend that the Dows' claims for negligent manufacture and distribution, breach of implied warranties, and breach of express warranty be preempted by the MDA. Although the holding in *Mendes* refers to a Class III device, it is also applicable to Class II devices, since the 510(k) process for a Class II device is identical to that of a Class III device. 21 C.F.R. §§ 807.87 and 807.92. With respect to the particular device and the negligent design claim at issue here, the reasoning in *Larsen, Moore* and *Stamps* is compelling. Thus, the Court recommends denial of summary judgment on Plaintiffs' claim of negligent design. While the Plaintiffs in the current action will certainly have a difficult row to hoe with this claim, the MDA does not pre-empt such claims for foley catheters.

Pre-emption requires that there be specific and applicable federal requirements which relate to the safety or effectiveness of the particular device. As described, other than identifying and classifying the foley catheter device, the FDA has imposed no specific design requirements for the foley catheter. The catheter was never subjected to a stringent premarket approval process, but rather was approved based on the more liberal pre-MDA regulatory requirements. The Court cannot simply assume that the design of the device has been subject to stringent premarket review and leave the Plaintiff without any possible remedy. Relying on *Mendes*, and with reference to *Larsen, Stamps* and *Parenteau*, the Court has no choice but to recommend that the Dows' claims for negligent design not be pre-empted. Blanket pre-emption of claims is not required. See *Ministry of Health, Province of Ontario, Can. v. Shiley, Inc.*, 858 F.Supp. 1426, 1440 (C.D.Cal.1994). Genuine and material facts with respect to Baxter's design of the foley catheter are at issue.

With respect to Ms. Dow's claim of an M.G.L. ch. 93A violation and Mr. Dow's loss of consortium claims, they are derivative of Ms. Dow's claim of negligent design. Since the Court has determined that the MDA does not preempt the negligent design claim, these derivative claims must survive as well.

## V. CONCLUSION

For the above reasons, this Court recommends the Defendant's motion for summary judgment be granted with respect to Plaintiff's claims of negligent manufacture and distribution, breach of implied warranties, and breach of express warranty. The Court further recommends that Defendant's motion for summary judgment be denied with respect to Plaintiffs' claims of negligent design, violation of M.G.L. Chapter 93A, and loss of consortium.[5]

Dated: May 5, 1995.

---

**5.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. See *U.S. v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *U.S. v. Vega*, 678 F.2d 376, 379 (1st Cir.1982). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).