**Robert MILKIEWICZ, as Personal Representative of the Estate of Mary A. Milkiewicz, deceased, Plaintiff**

**v.**

**BAXTER HEALTHCARE CORPORATION, a Delaware coropration, Defendants.**

**No.  95–2076–CIV–T–21C.**

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 16, 1996.

---

**15.**  *Id.*

Stephen H. Haskins, Dougherty, O'Malley & Mills, P.A., Clearwater, FL, for Robert Milkiewicz.

David R. Tyrrell, Hill, Ward & Henderson, P.A., Tampa, FL, for Baxter Healthcare Corp.

### *ORDER*

NIMMONS, District Judge.

This cause comes before the Court on Defendant's Motion for Summary Judgment (Dkt.14). Summary judgment is appropriate only when the Court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56(c). In making this determination, the Court must view all of the evidence in a light most favorable to the non-moving party. *Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). The burden of establishing the absence of a genuine issue is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the burden extends only to facts that might affect the outcome of the suit under the governing law. "Factual disputes that are irrel-. evant or unnecessary will not be counted."

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once this burden is met, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. However, a plaintiff need only present evidence from which a jury might return a verdict in his favor in order to survive a summary judgment motion. *Samples on Behalf of Samples*, 846 F.2d at 1330.

Plaintiff, in his Amended Complaint (Dkt.3), alleges that the decedent, Mary A. Milkiewicz, underwent a mitral valve replacement on November 9, 1993, in which she was surgically implanted with a porcine tissue heart valve manufactured, constructed, designed and sold by Defendant.[1] Ms. Milkiewicz's condition then began to deteriorate, and she died on August 31, 1994. Plaintiff asserts that Ms. Milkiewicz's death resulted from a pari-valvular leak in the implanted mitral heart valve. Plaintiff specifically contends that Defendant was negligent in the following respects: 1) designing the valve with a leak; 2) manufacturing and constructing the valve with a leak; 3) selling the valve when it knew, or should have known, that the valve had a leak; 4) failing to warn the general public and foreseeable users about the faulty nature of the valve; 5) failure to warn and instruct Ms. Milkiewicz and her physicians about the danger of the valve; 6) failure to make a reasonable inspection of the valve to determine the potential for leakage; 7) failure to otherwise exercise due care with respect to the design, manufacturing, constructing, and selling of the valve. Plaintiff's strict liability count asserts that Defendant designed, manufactured, and sold a heart valve containing an unreasonably dangerous defect.

Defendant, in its Motion for Summary Judgment, seeks judgment in its favor on all of Plaintiff's claims against it on grounds that those claims are pre-empted by the Medical Device Amendments of 1976 ("MDA") to the Food, Drug and Cosmetic Act ("FDCA").

---

1. The heart valve at issue is the Baxter Carpentier–Edwards Bioprosthesis Model 6625 LP.

Defendant argues that the recently-decided Supreme Court case of *Medtronic, Inc. v. Lohr*, —— U.S. ——, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), which addressed the pre-emptive effect of the MDA, supports a finding of pre-emption in this case. Plaintiff responds that Supreme Court's ridings in *Medtronic* support a finding that he can pursue his state-law claims in this case.[2]

In *Medtronic*, a recipient of a pacemaker and her husband (the Lohrs) brought state-law claims of negligence and strict liability against Medtronic, the manufacturer of the pacemaker. Medtronic moved for summary judgment on grounds that the Lohr's claims were pre-empted under the MDA. The pacemaker in the *Medtronic* case was classified as a Class III medical device under the MDA, which categorizes medical devices into three groups based upon the risk which they pose to the public. *Id.* at ——, 116 S.Ct. at 2246; 21 U.S.C. § 360c(a)(1)(C). Class III devices include those which present "a potential unreasonable risk of illness or injury," or which are "purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health." 21 U.S.C. § 360c(a)(1)(C).

A manufacturer may introduce a new Class III device to the market only after providing the FDA with a "reasonable assurance" that the device is both safe and effective. 21 U.S.C. § 360e(d)(2). The process of establishing reasonable assurance, known as "premarket approval" (PMA), involves rigorous review of the device by the FDA. *Medtronic*, —— U.S. at ——, 116 S.Ct. at 2247, 21 U.S.C. § 360e. Two exceptions to the PMA requirement permit manufacturers to introduce devices to the market with less stringent review. First, pursuant to a "grandfathering" provision, devices introduced prior to 1976 are permitted to remain on the market until such time as the FDA initiates and completes the PMA for those devices. *See* 21 U.S.C. § 360e(b)(1)(A). Secondly, manufacturers may introduce new devices which are "substantially equivalent" to existing devices on

the market without obtaining the PMA. A manufacturer of such an excepted device must submit a "premarket notification" to the FDA, at which time the FDA undertakes a limited review to determine whether the device is "substantially equivalent" to a pre-existing device. *See* 21 U.S.C. § 360(k) (the premarket notification process is also known as the " § 510(k) process," after the section number in the original Act). *Medtronic*, —— U.S. at ——, 116 S.Ct. at 2247. If the FDA finds substantial equivalence, the manufacturer may market the device without further regulatory analysis. The pacemaker in *Medtronic* was introduced to the market pursuant to the premarket notification process, in which the FDA undertook a limited review and determined that the pacemaker was a device substantially equivalent to devices already on the market.

In the *Medtronic* case, the Supreme Court undertook an examination of the pre-emptive effect of the MDA's provision concerning state and local requirements respecting devices, set forth at 21 U.S.C. § 360k(a). That Section provides:

(a) General rule

Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

The Justices of the Supreme Court issued a plurality decision in the case, with three opinions. Justice Stevens announced the judgment of the Court and delivered a lead opinion, containing six parts. Justices Kennedy, Souter, Ginsburg and Breyer joined with respect to Parts I, II, III, V, and VII. Justices Kennedy, Souter, and Ginsburg also joined with respect to Parts IV and VI of the opinion. Justice Breyer wrote a concurring opin-

---

**2.** The *Medtronic* case came to the Supreme Court on an appeal from the Eleventh Circuit's decision in *Lohr v. Medtronic*, 56 F.3d 1335 (11th Cir.

1995). For ease of reference, the Court will refer to the Supreme Court decision as *Medtronic* and the Eleventh Circuit decision as *Lohr*.

ion with respect to Parts IV and VI. Justice O'Connor delivered an opinion concurring in part and dissenting in part, in which Chief Justice Rehnquist and Justices Scalia and Thomas joined. In each opinion, the Justices sought to determine the meaning of the term "requirement" established by a state, as utilized in Section 360k(a), and to determine the types of FDA requirements which would pre-empt state-law requirements under that Section.

Justice Stevens, in Part III of the lead opinion, found that, although Section 360k(a) expressly provides that the MDA pre-empts some state law, the Court was required to determine the scope of that pre-emption. In making that determination, the Court recognized that a "presumption against the pre-emption of state police power regulations" and a determination of congressional purpose would govern its analysis. *Medtronic,* —— U.S. at ——, 116 S.Ct. at 2244 (citing *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 530 and 545–46, 112 S.Ct. 2608, 2624–25 and 2632–33, 120 L.Ed.2d 407 (1992)).

Applying those principles, Justices Stevens, Kennedy, Souter, and Ginsburg concluded in Part IV of the lead opinion, that the MDA clearly did not pre-empt any and all state-law causes of action brought by an injured plaintiff against a manufacturer of a medical device. Specifically, the term "requirement" in Section 360k(a) could not be interpreted to include all state common law causes of action. Such an interpretation, they reasoned, would effectively bar injured plaintiffs from pursing private causes of action, as the MDA neither explicitly nor impliedly created a private right of action. In Part VI of the lead opinion, those Justices declined to address the Lohrs' argument that common law duties were never "requirements" under Section 360k(a). Nevertheless, those Justices noted that it would be "rare indeed for a court hearing a common-law cause of action to issue a decree that has the 'effect of establishing a substantive requirement for a specific device,'" thereby resulting in the pre-emption of that common law cause of action by the MDA. *Medtronic,* —— U.S. at ——, 116 S.Ct. at 2259.

With respect to the Lohrs' negligent design claims, the Supreme Court, in Part V of the lead opinion, found that the premarket notification process set forth in Section 360(k) did not create a specific federally-enforceable design "requirement," as referenced in Section 360k(a), which would differ from requirements imposed by state common law causes of action. Instead, the FDA's determination of "substantial equivalence" under Section 360(k) merely maintained the status-quo, including a "possibility that a device's manufacturer would have to defend itself against state-law claims of negligent design." *Id.* at ——, 116 S.Ct. at 2255. Accordingly, Section 360(k)'s prenotification process would not serve to pre-empt the Lohrs' state common law design claims.

The Supreme Court, in Part V, also provided a more specific delineation of the types of FDCA requirements which would pre-empt state common law requirements pursuant to Section 360k(a). To determine the pre-emptive scope of the Lohrs' manufacturing and labeling claims, the Court relied upon an FDA regulation concerning the MDA's pre-emptive scope, set forth at 21 C.F.R. § 801.109(d). That Section provides:

> [S]tate or local requirements are pre-empted only when the Food and Drug Administration has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent state or local requirements applicable to the device different from or in addition to, the specific Food and Drug Administration requirements.

Based upon its finding that FDA regulations were pre-emptive if "specific to a particular device," the Court concluded that neither the federal labeling regulation, set forth at 21 C.F.R. § 801.109(b) and (c), nor requirements of "Good Manufacturing Practices," set forth in various CFR sections, had a pre-emptive effect on the Lohrs' state-law manufacturing and labeling claims. Because those statutory and regulatory requirements were general in nature, rather than specific to particular device or field of device regulation, they were not the type of matters with which Congress was concerned in enacting Section

360k(a)'s pre-emptive provisions. In Part V of its opinion, the Supreme Court noted that, in general, a determination of pre-emption under Section 360k(a) would require a "careful comparison between the allegedly pre-empting federal requirement and the allegedly pre-empted state requirement to determine whether they fall within the intended pre-emptive scope of the statute and regulations." *Medtronic*, at ——–——, 116 S.Ct. at 2257–58. A plaintiff could maintain a state-law cause of action based upon allegations of violations of FDA regulations, as those claims were not "different from, or in addition to" federal requirements. Although a plaintiff might be required to provide additional proof to prevail on a state-law cause of action, that additional proof would not result in a broader state-law requirement, but would, instead, narrow those requirements. Lastly, the Court announced its judgment in Part VII of the lead opinion, which reversed the Eleventh Circuit "insofar as it held that any of the claims were pre-empted and affirmed insofar as it rejected the pre-emption defense."[3] *Id.* at ——, 116 S.Ct. at 2259.

Justice Breyer, in his concurring opinion, found that state tort law actions imposed requirements within the meaning of Section 360k(a), in that those actions created standards of care or behavior. In so finding he essentially agreed with Justice O'Connor's discussion of the matter and her conclusion that state-law tort actions created "requirements" as referenced in Section 360k(a). He was unable to agree In his examination of the types of federal regulations which created federal "requirements" under Section 360k(a), Justice Breyer concluded that the ambiguity of the MDA's pre-emption provisions signaled a congressional intent that the Courts look beyond Section 360k(a)'s statutory language to determine the pre-emptive effect of particular federal regulations. Like Justice Stevens, Justice Breyer relied upon 21 C.F.R. § 808.1(d) in determining which federal requirements would pre-empt state requirements. Based upon that regulatory provision and upon principles of conflict and

field pre-emption, he concluded that the FDA regulations would pre-empt state law only when specific and applicable to a particular device. Because he found the FDA regulations at issue non-specific and not in conflict with liability-creating premises of the Lohrs' state-law claims regarding manufacture and labeling, he concluded that MDA did not pre-empt those claims.

Lastly, Justice O'Connor and those Justices joining in her opinion concluded that state common law actions created duties which constituted "requirements" within the meaning of Section 360k(a). The MDA would pre-empt those state-law actions to the extent those actions rested on the imposition of "any requirement" different from, or in addition to FDCA requirements applicable to a device. *Id.* at ——, 116 S.Ct. at 2263. She noted that a state-law action for damages, which sought to enforce an FDCA requirement, would not necessarily impose requirements different from those of federal law. Instead, such an action would only create a different remedy for federal law violations. Justice O'Connor agreed with the judgment as to the Lohrs' defective design claim, and found that the FDCA's premarket notification process placed no federal requirements on devices. However, she concluded that the Lohrs' claims based upon manufacturing and failure to warn were pre-empted by FDA labeling regulations and the FDA's Good Manufacturing Practice regulations. In so concluding, she rejected the holdings of Justice Stevens' and Justice Breyer's opinions regarding the specificity aspect of federal requirements, and construed federal pre-emptive provisions more broadly. *Id.* at ——, 116 S.Ct. at 2264.

In the instant case, the heart valve implanted in Mrs. Milkiewicz was classified as a Class III device by the FDA. Unlike the pacemaker in the *Medtronic* case, which was introduced on the market pursuant to the limited premarket notification process, the heart valve implanted in Mrs. Milkiewicz was reviewed and approved by the FDA through

---

**3.** The Eleventh Circuit concluded that the Lohrs' claims of negligent manufacturing and failure to warn and the parallel strict liability claims based on manufacturing and failure to warn, were pre-empted by the FDA's Good Manufacturing Practices regulations and by FDA labeling regulations. *Lohr*, 56 F.3d at 1350–51.

the more rigorous PMA process. Defendant, in its Motion for Summary Judgment, argues that the Supreme Court's reasoning in *Medtronic* compels a finding that, with respect to devices which have undergone PMA review, the MDA pre-empts state common law claims based upon the design, manufacture, and failure to warn. Defendant presents its argument in three parts. First, Defendant asserts that a majority of Justices in the *Medtronic* case concluded that state-law causes of action created state law "requirements" subject to pre-emption by federal law under Section 360k(a). Secondly, Defendant argues that the PMA, unlike the premarket notification process in *Medtronic*, establishes federal requirements specific to a particular device. Lastly, Defendant concludes that Plaintiff's state-law claims create requirements "different from, or in addition to," the federal PMA requirements and are, therefore, pre-empted.

■ The Court will first address Defendant's contention that the Supreme Court's plurality decision in *Medtronic* compels a finding that state-law claims impose state-law requirements as that term is used in Section 360k(a). To address that argument, it is necessary to determine the precedential value of the plurality decision issued by the Supreme Court. When the Supreme Court issues a plurality decision, and "no rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....'" *Marks v. United States,* 430 U.S. 188, 192, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (citing *Gregg v. Georgia,* 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859 (1976)). In the *Medtronic* case, all Justices agreed that the Lohrs' design claims were not pre-empted by Section 306k(a). Although the four Justices joining the lead opinion reached a decision on broad grounds that the Lohrs' design claims did not establish state-law requirements subject to pre-emption, the remaining five Justices did not join in that reasoning. Nevertheless, all Justices agreed that the notification process set forth in Section 301(k) imposed no federal requirement which could pre-empt a state-law cause of

action. Accordingly, with respect to the design claim, the Justices reached concurrence upon the narrowest ground that Section 301(k) placed no federal requirement on devices. With respect to the Lohrs' manufacturing and labeling claims, five Justices concurred in the judgment that the MDA did not pre-empt those claims. The Justices joining in Justice Stevens' lead opinion reached that conclusion both on grounds that the Lohrs' state common law causes of action based on manufacturing and labeling established no requirements subject to pre-emption and on grounds that the federal labeling and Good Manufacturing Practice regulations were not requirements specific to a particular device which would require pre-emption. Because Justice Breyer, who concurred in the judgment with respect to those claims, reached his decision only on grounds that federal labeling and Good Manufacturing Practice regulations were not specific requirements applicable to a particular device which could pre-empt state requirements, those are the narrowest grounds upon which the Supreme Court reached its holding. *Marks,* 430 U.S. at 192–93, 97 S.Ct. at 993; *see also Redner v. Dean,* 29 F.3d 1495, 1499 (11th Cir.1994), *cert. denied,* 514 U.S. 1066, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995) (finding that when faced with a fragmented Court, a circuit court may distill the various opinions down to their narrowest grounds of concurrence to derive any binding precedent).

Defendant asserts that because the numerical majority of Justices in the *Medtronic* case concluded that state-law causes of action could impose state-law requirements under Section 360k(a), this Court must reach such a conclusion. Defendant correctly asserts that Justice Breyer, in his concurring opinion, and Justices O'Connor, Scalia, Rehnquist, and Thomas, in their opinion dissenting in part and concurring in part, concluded that state-law causes of actions will create state-law standards of care and duties which ordinarily amount to "requirements" subject to pre-emption under Section 360k(a). However, Justices O'Connor, and those Justices joining her, reached their conclusion in an opinion disagreeing with the plurality judgment.

This Court, therefore, cannot consider their view in determining the "position taken by those Members who concurred in the judgments on the narrowest grounds." *See Rappa v. New Castle County,* 18 F.3d 1043, 1060 (3d Cir.1994) (finding that a view taken by a majority of concurring and dissenting Justices could not have precedential value, "as the precedential meaning would then he inconsistent with the result in that case"); *King v. Palmer,* 950 F.2d 771, 784 (D.C.Cir. 1991), *cert. denied* 505 U.S. 1229, 112 S.Ct. 3054, 120 L.Ed.2d 920 (1992) (finding that "we do not think we are free to combine a dissent with a concurrence to form a *Marks* majority"). Accordingly, this Court is not persuaded by Defendant's argument that Justices' decisions in the *Medtronic* case compel a conclusion that state-law causes of action establish requirements subject to pre-emption.[4]

In the absence of binding Supreme Court precedent on the issue of whether state-law causes of action ordinarily create state-law "requirements" for devices, as referenced in Section 360k(a), this Court is bound by Eleventh Circuit decisional law which addresses that particular issue. The Eleventh Circuit, in *Lohr,* held that "the phrase 'State ... requirement' in § 360k(a) includes state common law tort actions." 56 F.3d at 1342. Because that particular holding has not been reversed on appeal, this Court must conclude that Plaintiff's state-law tort claims create state-law requirements as that term is used in Section 360k(a). Accordingly, Plaintiff's state-law claims are pre-empted under Section 360k(a) if they create requirements which are "different from, or in addition to" federal requirements.

■ Defendant asserts that the PMA process creates federal requirements with pre-emptive effect. Justice Stevens' lead opinion and Justice Breyer's concurring opinion reached a common ground of agreement that FDA requirements are pre-emptive only when they are "specific" requirements applicable to a particular device. *Medtronic* at —, 116 S.Ct. at 2257 (citing 21 C.F.R.

§ 808.1(d)); *Medtronic* at —, 116 S.Ct. at 2261.

The PMA process imposes a procedural approval requirement on various Class III devices. *Martello v. Ciba Vision Corp.,* 42 F.3d 1167 (8th Cir.1994), *cert. denied* — U.S. —, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995); *Stamps v. Collagen Corp.,* 984 F.2d 1416, 1422 (5th Cir.1993), *cert. denied* 510 U.S. 824, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993). Although PMA procedures are applicable to many Class III devices, the general applicability of the approval requirement does not compel a finding that the requirement is not specific to a particular device. *Id.* (finding that the PMA process constitutes a "specific requirement" applicable to a particular device); *Martello,* 42 F.3d at 1168; *King v. Collagen Corp.,* 983 F.2d 1130 (1st Cir.1993), *cert. denied* 510 U.S. 824, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993). Instead, as a result of the PMA process, the FDA regulates the particular device undergoing review by ensuring that it meets specific requirements, then provides approval for those devices "that have been shown to be safe and effective and that otherwise meet the statutory criteria for approval." 21 C.F.R. § 814.2(a). When the FDA has approved a PMA application, it issues the applicant an order approving the PMA and provides public notice of the order. The FDA publishes the notice of approval in the Federal Register and includes a "detailed summary of the information respecting the safety and effectiveness of the device which was the basis for the order approving the PMA." 21 C.F.R. § 814.44(d).

An applicant seeking PMA approval must include with its application copies of all proposed labeling for the device, which may include instructions for installation and any information constituting labeling. 21 C.F.R. 814.20(b)(10). The Secretary may deny approval of an application if there is a "lack of showing of reasonable assurance that such device is safe under the conditions of use prescribed, recommended, or suggested in the proposed labeling thereof." 21 U.S.C.

---

**4.** The Court notes that Justice Stevens' lead opinion did not entirely rule out the possibility that a state-law cause of action could create a state-law requirement. That opinion merely concluded that such an instance would be rare.

§ 360e(d)(2)(A). The FDA, in its Order approving an application, may condition approval upon "the applicant incorporating the specified labeling changes exactly as directed [by the FDA] and upon the applicant submitting to FDA a copy of the final printed labeling before marketing." 21 C.F.R. § 814.44(d). Similarly, the FDA, during PMA, scrutinizes the design and manufacture of the specific device under review, rather than generally requiring compliance with the statutory manufacturing standards. *See* 21 U.S.C. § 360e(c)(1)(B)-(C) (setting forth PMA application requirements regarding ingredients, components, methods, controls, and facilities used in the manufacturing and processing of a device); 21 U.S.C. § 360e(d)(2)(C) (requiring the denial of an application when the "methods used in, or facilities or controls used for, the manufacture, processing, packing, or installation of such device do not conform to the requirements of section 360j(f) of this title").

In the instant case, the heart valve at issue underwent a PMA process which spanned approximately four years. Defendant submitted its PMA application for the particular heart valve on December 4, 1987. The application, with its various amendments, contained detailed data regarding testing of the device, design, production, and manufacturing of the device, specifications and principles of operation for the device, proposed product labels and labeling materials for the device, and other information required by statute. Defendant made various amendments to its application pursuant to FDA determinations that submitted materials were inadequate. Throughout the process, the FDA sent Defendant's representatives frequent correspondence which set forth the specific nature of deficiencies in the application and in data provided therein. On September 25, 1991, the FDA approved Defendant's application for the device.

■ As a result of the PMA process, the FDA has designated specific federal requirements for the heart valve at issue which

pertain to its safety and effectiveness, and Defendant has met those requirements by obtaining approval. Therefore, Plaintiff's state-law claims will be pre-empted to the extent that they would impose requirements on the device which are different from, or in addition to, the federal requirements. Based upon the above analysis of the Supreme Court's plurality *Medtronic*, the Court finds that Plaintiff's state-law claims are not pre-empted under Section 360k(a) to the extent that they seek to enforce requirements established by the FDA as a result of the PMA process. *Medtronic*, —— U.S. at ——, 116 S.Ct. at 2255 (finding that Florida can provide a traditional damages remedy for violations of state-law duties when those duties parallel federal requirements); *see also Id.* at ——, 116 S.Ct. at 2264 (O'Connor, J., finding that state law claims are not pre-empted to the extent that they seek damages for violations of federal requirements). Specifically, Plaintiff may pursue his claims only to the extent that he is claiming that Defendant failed to undertake the tasks of manufacturing, construction, design, warning, labeling and inspection in accordance with those specifications which received FDA approval during the PMA process.[5] Plaintiff's claims are otherwise pre-empted.

■ Plaintiff, in his Amended Complaint, does not specify whether his claims are based upon Defendant's failure to comply with two specifications for the heart valve which the FDA approved during the PMA of the valve. The Court has no further information regarding the nature of proof which Plaintiff intends to present in support of his claims, which would permit the Court to make a determination of that matter. Accordingly, the Court cannot conclude that Plaintiff's state-law claims are pre-empted pursuant to Section 360k(a) and cannot grant summary judgment in Defendant's favor on those claims. There is, however, a possibility that the Court's rulings herein may severely restrict, if not eliminate, the claims which Plaintiff intends to pursue in this action.

---

5. For example, Plaintiff could assert a claim against Defendant based upon a failure to place the FDA-approved labeling on its device. If, however, Defendant has labeled its device in the manner approved during the PMA process, Plaintiff's claims concerning labeling and failure to warn would be pre-empted.

Therefore, the Court finds it appropriate to require Plaintiff to file herein a notice which informs the Court whether Plaintiff intends to pursue his claims in light of the Court's rulings herein.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt.14) is DENIED.

2. Plaintiff is DIRECTED to file herein, on or before December 20, 1996, a Notice which informs the Court whether Plaintiff intends to pursue his claims in light of the Court's rulings herein.

3. The parties' Joint Motion to Extend Time for Completion of Discovery and for Continuance (Dkt.20) is GRANTED. The Court will reschedule the discovery deadline and the pretrial conference and trial of this matter by separate order following receipt of Plaintiff's above-referenced Notice, should such a rescheduling be necessary.